LEGION MANOR, INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND WEBSTER HOMES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS-APPELLANTS, v. MUNICIPAL COUNCIL OF THE TOWNSHIP OF WAYNE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT - RESPONDENT.

Argued April 10, 1967—Decided July 5, 1967.

422

*Mr. Martin S. Mandon* argued the cause for plaintiffs-appellants (*Messrs. Mandon & Schwartz*, attorneys).

*Mr. Anthony J. Orrico* argued the cause for defendant-respondent (*Mr. Peter J. Van Norde*, attorney).

The opinion of the court was delivered by

WEINTRAUB, C. J. The municipal ordinance provides that in connection with the final approval of a subdivision the municipality may accept a performance bond for the installation thereafter of improvements required for the development. The ordinance further provides for the release of a performance bond upon acceptance of the work and the filing of a "maintenance" bond. After plaintiffs filed such bonds, the local ordinance was amended to require a subdivider to give written notice to all property owners in the development of the time when they could be heard before the municipal council with respect to whether the condition of a performance bond or of a maintenance bond had been met. Plaintiffs contend (1) these amendments calling for notice to the property owners are invalid and (2) in any event there is no statutory authorization for the exaction of a maintenance bond. The trial court found for the municipality and we certified plaintiffs' appeal before argument in the Appellate Division.

The Municipal Planning Act (1953) provides in *N. J. S. A.* 40:55–1.21:

"Before final approval of plats the governing body may require, in accordance with the standards adopted by ordinance, the installation, or the furnishing of a performance guarantee in lieu thereof, of any or

all of the following improvements it may deem to be necessary or appropriate: street grading, pavement, gutters, curbs, sidewalks, street lighting, shade trees, surveyor's monuments, water mains, culverts, storm sewers, sanitary sewers or other means of sewage disposal, drainage structures, and such other subdivision improvements as the municipal governing body may find necessary in the public interest."

*N. J. S. A.* 40:55–1.22 authorizes the governing body to accept "adequate performance guarantees for the purpose of assuring improvements" referred to in the section just quoted, and *N. J. S. A.* 40:55–1.2 defines "performance guarantee" to mean "any security * * * including performance bonds, escrow agreements, and other similar collateral or surety agreements."

I

Turning first to the question whether a maintenance bond may be required, we note that the statute empowers the governing body to require "adequate" performance guarantees. Performance contemplates not only that the work be completed but also that it be done correctly. The municipality properly protected itself upon both scores. It could have required a single performance bond calling for completion and for continued liability, surviving acceptance, with respect to defective work and materials, or it could provide for two bonds, one to deal with the completion of the work and the other to continue liability with respect to defects in work or material. The municipality took the latter course. The so-called "maintenance" bond, which in amount is 10% of the performance bond, is limited to "all defects of material or workmanship in the said work" which may develop during the ensuing three years. The use of a second bond benefits the developer by reducing the amount of the secured liability in harmony with the spirit of *N. J. S. A.* 40:55–1.22. It also avoids an issue of construction which sometimes arises under a single performance bond as to whether acceptance of the work was intended to end liability for defects which later appear. See, 17 *Am. Jur. 2d, Contractors' Bonds,* § 96, *p.* 274; *cf. Annotation,* 72 *A. L. R.* 644 (1931).

The covenant being for repairs with respect to defective work or material, the maintenance bond did not impose upon the developer (and, through him, on the property owners) a liability for the "maintenance" of roads in the ordinary sense of the term, *i. e.*, with respect to repairs due to wear and tear, and thus did not depart from the thesis of the statute that the developer (and through him his vendees) shall absorb the cost of the improvement itself as distinguished from its future maintenance. See, *West Park Ave., Inc. v. Ocean Tp.,* 48 *N. J.* 122, 126 (1966), and *Levin v. Livingston Tp.,* 35 *N. J.* 500, 514–515 (1961). The "maintenance" bond here involved is but a guarantee of performance. See, 13 *McQuillin, Municipal Corporations* (*3d ed.* 1950), § 37.113, *pp.* 371–372; *Wilson v. Inhabitants of City of Trenton,* 61 *N. J. L.* 599 (*E. & A.* 1898) ; *Mueller v. Boulevard Comm'rs of Hudson County,* 87 *N. J. L.* 702 (*E. & A.* 1915).

## II

The other question is whether the municipality may provide for a hearing on notice to the owners of property within the development with respect to compliance by a subdivider with these performance bonds.

First plaintiffs say the Municipal Planning Act (1953) does not expressly authorize such a public hearing. That this is so is of no moment. The act provides that it "shall be construed most favorably to municipalities, its intention being to give all municipalities the fullest and most complete powers possible concerning the subject matter hereof." *N. J. S. A.* 40 :55–1.3. Surely the governing body may reserve to itself the right to decide for the municipality whether it should release a bond. That power is implicit in the nature of the subject and as well in *N. J. S. A.* 40 :55–1.22 which provides that "the governing body by resolution" may reduce the amount of a performance guarantee and extend time for performance. A municipality may, if it is so minded, provide for public notice with respect to the adoption of a resolution. In their supplemental brief filed after argument,

plaintiffs conceded that power and shifted their complaint to the imposition upon the developer of the burden of giving the notice. That burden is trivial in its dollar demand, and we see no reason to deny the municipality the power to impose it as an incident of a performance guarantee.

■■ We see no substance to the claim that the amendments to the ordinance are constitutionally infirm because they lack a standard for the ultimate action of the governing body. The standard is compliance with the condition of the bond. Nor is there an invidious classification because notice is required to be given only to a part of the public, *i. e.,* the owners of property in the development. Those owners have a distinctive interest in that as a practical matter they paid for the public improvement via the purchase price for their properties. They also are specially well situated to know whether defects in the work have appeared.

Finally plaintiffs challenge the power of the municipality to apply the amendments retroactively to existing bonds. Plaintiffs say the effect is to enlarge their obligations after final approval contrary to the intent of the statute, *Levin v. Livingston Tp., supra,* 35 *N. J.,* at *pp.* 516–517; *Pennyton Homes, Inc. v. Planning Board of Borough of Stanhope,* 41 *N. J.* 578, 585 (1964), and also to impair the obligation of contract in violation of the New Jersey Constitution, *Art.* IV, § 7, ¶ 3.

Both objections assume that under the ordinance prior to the amendments and also under the terms of the bonds, the improvements had to be installed only to the satisfaction of the township engineer, whereas under the amendments the governing body too must be satisfied. As to the ordinance, the amendments do not purport to modify the condition of the bonds or the general provisions dealing with the responsibility of the township engineer. As to the bonds themselves, the performance bond expressly requires performance "to the satisfaction of the Township Engineer" whereas the maintenance bonds do not contain that provision. At any rate, we see no need to decide the precise impact of a decision by the

township engineer. It was always within the authority of the governing body as the obligee upon the bonds to decide whether to accept the performance or to challenge its sufficiency. This was so whether or not the decision of the township engineer would be binding upon the parties in the event of litigation. The amendments merely provide for a hearing at which the governing body, and the township engineer as well, could well obtain helpful information with regard to their respective decisions.

 Insofar as plaintiffs may be asserting that their obligation is invalidly enlarged by the retroactive requirement that they undertake the chore of sending notices to the owners of property within the development, we repeat that the burden is trivial. It relates only to the procedure for obtaining the acknowledgment by the governing body that the obligation of the bond has been performed; it does not add to the substance of that obligation. *Cf. Pennsylvania Greyhound Lines, Inc. v. Rosenthal,* 14 *N. J.* 372 (1954) ; 5 *McQuillin, Municipal Corporations* (*3d ed.* 1949), § 19.48, *p.* 599. Nor would it comfort plaintiffs at all if the municipality itself sent the notices to the property owners. Plaintiffs' real complaint is that a notice of hearing as to the performance bonds invites claims by their purchasers with respect to unrelated things, which, say plaintiffs, could distract a governing body, aware of the power of the voter, from the true question before the meeting. We need hardly say that local government may not be denied an appropriate power for fear that some governing body may not be equal to the responsibility it entails.

The judgment is affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.

*For reversal* — None.