98 N.J. Super. 344 (1967)
237 A.2d 483
JOEL KLIGMAN AND MARCIA KLIGMAN, PLAINTIFFS-APPELLANTS,
v.
SOLOMON LAUTMAN, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 4, 1967.
Decided December 22, 1967.
*347 Before Judges CONFORD, COLLESTER and LEONARD.
Mr. Jerome S. Lieb for appellants (Messrs. Harkavy and Lieb, attorneys; Mr. Abraham I. Harkavy, of counsel).
*348 Mr. Henry J. Saling for respondents (Messrs. Saling, Boglioli & Moore, attorneys).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Plaintiffs brought two actions against the Borough of Deal and certain of its officials which seek (1) a judicial direction to the governing body of the borough to approve a map showing a proposed subdivision of a lot of land owned by plaintiffs so that the same may be acceptable for filing by the county recording officer of Monmouth County in accordance with the Map Filing Law, L. 1960, c. 141; N.J.S.A. 46:23-9.9 et seq.; and (2) a declaration that they are entitled to building permits for the erection of dwellings on each of two of the four lots shown on said map, for which application for permits was made and denied. Judge Simill entered judgment in the Law Division in favor of defendants in both actions, and plaintiffs appeal.
We heretofore reversed a summary judgment previously entered in the first action in favor of the plaintiffs. Kligman v. Lautman, 91 N.J. Super. 488 (App. Div. 1966).
In 1964 plaintiffs acquired a rectangular tract of land, apparently once the site of a residential mansion having a frontage of 300 feet on the easterly side of Ocean Avenue in Deal and extending 949 feet to a point in the Atlantic Ocean. At the ocean end of the property about 130 feet of the tract is east of the high water mark, and westerly thereof for about 60-75 feet additional the land comprises a beach leading to an embankment. As the property then stood it could legally have been divided and improved by only two homes fronting on Ocean Avenue. This is for the reason that there was no other street access and the local zoning ordinance requires: (a) a minimum lot frontage of 150 feet in the particular residential district, and (b) that no structure be erected except on a plot or lot which fronts on a public street dedicated to and accepted by the municipality. Plaintiffs desired to create four residential lots out of the parcel, and to that end caused to be prepared, after a revision necessitated *349 by other zoning requirements not now pertinent, a map, the subject of the present controversy, which subdivides the property as follows. A 50-foot street denominated "Taffy Lane," runs from Ocean Avenue easterly along the northerly boundary of the tract and culminates in a cul-de-sac about 450 feet from Ocean Avenue. Four building lots are laid out on the property, all of which but the westernmost lot have street access only through Taffy Lane. The westerly lot abuts both Ocean Avenue and Taffy Lane, but this case has been presented on the implicit assumption that it, too, would front on the latter thoroughfare.
Immediately north of and contiguous to the proposed street are three presently improved lots with residences fronting on Wallace Road, an existing public street parallel to Taffy Lane and lying 150 feet to the north thereof, which also culminates in a cul-de-sac. Thus, Taffy Lane would directly abut the rear yards of the homes on Wallace Road.
It is unnecessary here to detail all of the original dealings between plaintiffs and the municipality in the course of the former's efforts to obtain approval of this map, but it should be noted that on February 8, 1966 the municipality amended its ordinance which regulates the acceptance of dedicated streets to add two sections reading as follows:
"Section 4. That no road, avenue, street or highway shall be accepted for dedication by the Borough of Deal which is within two hundred fifty (250) feet of an accepted and existing street.
Section 5. No road, avenue, street or highway shall be accepted for dedication which does not have lots fronting on both sides of said street, avenue, road or highway."
This amendment was adopted shortly after summary judgment was entered against defendants in the first phase of this litigation, as noted above, and pending the appeal which resulted in the reversal thereof by this court. We held in the prior decision, from which no appeal was sought to be taken, that the case had to be considered on the basis of all local legislation then in existence, including the said amendment. See 91 N.J. Super., at p. 493.
*350 Defendants' position below and on this appeal is that the Board of Commissioners of Deal cannot grant the approval of this map, which plaintiffs need to obtain its filing with the county recording officer under N.J.S.A. 46:23-9.14, because the borough engineer cannot properly sign the certificate made a requisite to approval by N.J.S.A. 46:23-9.11(n), nor the municipal clerk that called for by paragraph(p) of that section. Under the former the engineer must certify that the map conforms with the provisions of the act "and the municipal ordinances and requirements applicable thereto." Under the latter, if "the map shows streets, avenues, roads, lanes or alleys" the clerk must certify "that the municipal body has approved such streets, avenues," etc. Defendants point out that neither such certificate has been made and contend that neither can properly be executed because the governing body has not "approved" Taffy Lane as shown on the map and is justified in withholding its approval because that street would be incapable of dedication and acceptance as a public street under both sections 4 and 5 of the amended street ordinance. It would be disqualified under section 4 because it is less than 250 feet from Wallace Road, and under section 5 because it does not have lots fronting on its north side but only its south side. In view of this fact, the engineer's certification needed under paragraph(n) of N.J.S.A. 46:23-9.11 would have to be withheld for the added reason that the map does not "conform with" an applicable ordinance, i.e., the zoning ordinance, in that it shows building lots which do not front on an accepted public street and for which building permits could for that reason not be validly issued under section 12A of that ordinance.
Deal has no planning board and has not adopted the provisions of the Municipal Planning Act, L. 1953, c. 433 (N.J.S.A. 40:55-1.1 et seq., 1.4).
Before taking up plaintiffs' grounds of attack on the defendants' position in this matter, it should be noted that the Map Filing Law as it now stands is in substance a 1960 revision of a more thorough-going revision in 1953 of the *351 Old Map Law. See L. 1953, c. 358; R.S. 46:23-1 et seq. The history and purpose of the Old Map Law is discussed in Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, 28 N.J. 423, 433 et seq. (1958), which cites a prior judicial description of it as "hardly more than a conveyancing aid" although recognizing that it contained "rudimentary planning features with respect to the width and location of new streets and highways." Ibid. The Old Map Act provided that if the map submitted for municipal approval showed streets, avenues, roads, lanes or alleys, the governing body having control of streets in the area must first have "approved" such streets by resolution. R.S. 46:23-2(e). Like the present act, however, N.J.S.A. 46:23-9.13, such approval was declared not construable as an acceptance of any such street or as creating an obligation of maintenance thereof by the municipality. R.S. 46:23-8.

I
Plaintiffs have practically conceded in their brief that if the February 1966 street ordinance amendment is valid they have no right to municipal approval of the map as submitted since that ordinance would preclude acceptance of Taffy Lane by the municipality as a public street for reasons stated above. Reserving treatment of their argument as to invalidity of the ordinance, we direct our attention to their alternative request that the court consider the acceptability of the map as if it showed Taffy Lane as a private, not a public road, and their contention that, so regarded, the street ordinance would not be applicable and the map would then comply in all respects with the Map Filing Law. We point out at once that this position, even if accepted, would not be dispositive of the additional objection by the municipality that a private road would not satisfy the already noted requirement of the zoning ordinance that lots not fronting on accepted public roads may not be built upon, and that this would bar the engineer from certifying conformance of the map with all *352 applicable ordinances. However, plaintiffs have an answer to that, and we will deal with it after meeting the first point mentioned.

A
Preliminarily, the map which plaintiffs have submitted does not show Taffy Lane as a private street or road. The request, made for the first time at the hearing below, that the court consider the sufficiency of the map for purposes of approval for filing on the assumption that the street is designated on the map as a private street, in effect constitutes a new claim for declaratory relief. Defendants not objecting to our consideration of it as such, and it being desirable that this controversy be concluded in its entirety, we entertain the claim.
Plaintiffs assert that considering Taffy Lane as a private road and not a potential subject of dedication, nothing in sections 4 and 5 of the street ordinance can justify the municipal refusal of approval of the map. They offer to build and maintain the street in accordance with all physical specifications and dimensions required by the municipality. However, the only such specifications now in effect are those set forth in the street dedication ordinance as of prior to the adoption of sections 4 and 5. And those, as set forth in sections 1 and 2 of that ordinance, are preconditions only to the sufficiency of the street for qualification for acceptance as a dedicated street, not a private one.
The defendants argue that if the Map Filing Law, as plaintiffs contend, contemplates that a map submitted thereunder may contain private as well as public streets, the statutory precondition of municipal approval of such streets should logically extend to approval of such private streets, and that if the streets for any reason are so constructed, located or otherwise constituted as not to qualify for acceptance as public streets under an existing ordinance, they may properly be denied approval by the governing body for purposes *353 of the Map Filing Law even though not originally proposed to be public streets.
We are convinced that defendants' position is a sound one. If Taffy Lane is opened and the lots developed as proposed, the street will to all intents and purposes constitute a public thoroughfare insofar as service of the four new homes is concerned. This will be the sole means of access for ambulances, police, fire, garbage and postal vehicles, as well as commercial service and all other vehicles which have occasion to go to these homes. Further, the impact of the presence of the street on the surrounding area would be no different from that of a public street at the location. There could be no satisfactory assurance that the maintenance of the street or of necessary street services, such as snow removal and the like, would be satisfactorily carried on in the future by private persons no matter what undertaking along those lines were now entered into by the present owners. The potentiality for later municipal acquisition of the street in the interests of the public welfare would consequently always remain. And if this eventuality should come to pass, the municipality would inherit a street irremediably constituted and located contrary to the publicly ordained standards set forth in sections 4 and 5 of the street ordinance.
We are therefore of the opinion that even if plaintiffs are permitted to amend the map to designate Taffy Lane a private thoroughfare, the municipality may decline to approve it on the ground that it fails to meet all of the standards set forth by the ordinance for public streets, and that this precludes satisfaction of the statutory prerequisite that the governing body has approved any streets shown on the map.

B
We have in our prior opinion taken cognizance of defendants' argument that the potentiality of a street for lawful acceptance upon dedication is irrelevant in connection with the municipality's determination whether to approve *354 the street, since the statute expressly provides that such approval shall not constitute an acceptance of a street. N.J.S.A. 46:23-9.13. We adhere to our position there stated (91 N.J. Super., at p. 494):
"* * * [W]e deem this merely to mean that the approval shall not of itself constitute evidence of acceptance of a dedication. The cited provision does not necessarily mean that the susceptibility of the proposed street for lawful acceptance of dedication is not a proper consideration for a governing body whose approval of streets shown on the map is required to be certified on the map by the municipal clerk as a condition for the public filing thereof under the statute. We think that factor is appropriate, if, indeed, not essential, for such consideration by the governing body."

C
Plaintiffs seek to meet the bar of inability of the engineer to certify compliance with all applicable ordinances in relation to the failure of the lots to comply with the zoning ordinance requirement for issuance of building permits that they front on a public street by contending that the State has preempted the subject by enactment of the Official Map and Building Permit Act ("Building Permit Act," hereinafter), L. 1953, c. 434, N.J.S.A. 40:55-1.30 et seq. The argument is that the effect of section 1.39 is to guarantee as a matter of state policy that building permits must be granted, insofar as street access is concerned, for any lot abutting a private road, and that a municipal ordinance requiring access via a public road is invalid as in conflict therewith. Plaintiffs cite Loveladies Prop. Own. Ass'n v. Barnegat City Serv. Co., 60 N.J. Super. 491, 502 (App. Div. 1960), where, in commenting on the scope of the definition of "streets" in the definition section of the Building Permit Act, section 1.31, we said: "That definition is seen to include all manner of private ways."
The Building Permit Act does not declare or evince any statewide policy that the owner of any lot fronting on a *355 private street of any sort must necessarily be given a building permit without regard to any contravening requirement of a municipal ordinance. First, section 1.31 of the act merely fixes a minimum requirement for issuance of building permits, i.e., that the lot abut a street (improved to the satisfaction of the governing body) of one of the kinds specified therein. One specified classification of street is such as are shown on a plat filed with a county recording officer pursuant to the Old Map Act. Since such plats could and did sometimes show private streets (as was the case with that involved in the Loveladies case, supra), it is correct to say that in some circumstances a particular private street may satisfy the minimal requirements of the Building Permit Act. But this is not to say that the statutory purpose is to preclude a municipal provision by ordinance, as here, that buildings not be erected except when situated on a lot fronting on a public street. The municipal requirement is properly to be regarded as intended as a safeguard against the possibility of deteriorated or inadequate street access to structures  a condition which might have consequences deleterious to the public welfare. The statutory policy is not impaired or subverted by the ordinance. State legislation for the protection of the public does not necessarily foreclose additional municipal action toward that end not violative of the state policy. See Fred v. Mayor and Council, Old Tappan Borough, 10 N.J. 515, 521-522 (1952); Cranberry Lake Quarry Co. v. Johnson, 95 N.J. Super. 495, 510-511 (App. Div. 1967).
We are not here confronted with a situation of arbitrary or unreasonable refusal by the borough to accept a dedicated street with the consequent frustration of plaintiffs' right to make reasonable use of their land as a consequence of the ordinance in question.
We have considered the several cases cited to us by plaintiffs in this connection and find none of them apposite.

*356 II
Plaintiffs attack the validity of sections 4 and 5 of the street ordinance as unreasonable and arbitrary as well as vague. We begin with the presumption of validity and plaintiffs' heavy burden of clearly demonstrating the contrary.
It is first argued that literally section 4 would prohibit any street intersecting any other street. This construction, however, constitutes so absurd an hypothesis of intent as to be untenable and to warrant rejection. See Graham v. City of Asbury Park, 69 N.J. Super. 256, 263 (App. Div. 1961), affirmed 37 N.J. 166 (1962). In any event, defendants invoke the section only in relation to the proximity of Taffy Lane to Wallace Road, and there is no lack of clarity in the ordinance in that respect.
Plaintiffs assert that "by no stretch of the imagination" can there be perceived any rational relationship between the requirements of the ordinance and any proper exercise of the police power. We cannot agree.
R.S. 40:48-2 provides as follows:
"Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law."
This provision constitutes "an express grant of broad governmental and police powers to all municipalities." It is not to be read as providing only authorization to enact ordinances to carry into effect other specifically enumerated powers. Fred v. Mayor and Council, Old Tappan Borough, supra, 10 N.J., at pp. 519-520. The fact that power to enact a particular type of police regulation is specially granted municipalities by a specific statute, such as that *357 controlling zoning, will not of itself invalidate an ordinance otherwise within the police power scope of R.S. 40:48-2 merely because it could have been included in the zoning ordinance. Id., at pp. 521-522. Only where it is manifest that the Legislature has intended to confine the power of the municipality to act with respect to particular subject matter to action in a particular manner, or of delimited scope or with specified concomitants and conditions, is the municipality so restricted insofar as the general scope of R.S. 40:48-2 is concerned. These views comport with the liberal philosophy in favor of municipal legislative power expressed in Article IV, Section VII, paragraph 11 of the New Jersey Constitution (1947). Cf. Magnolia Development Co., Inc. v. Coles, 10 N.J. 223 (1952), prohibiting municipal requirements for paving, curbs, sidewalks, etc., in a development shown on a map submitted for approval under the Old Map Act on the ground that no power to impose such exactions was expressed in that act.
The validity of the ordinance here in question should also be weighed from the standpoint of the general range and scope of subject matter comprised by R.S. 40:67-1, under which municipalities have power to adopt ordinances to: (a) ascertain and establish the boundaries of streets; (b) accept streets dedicated to public use; (e) cause owners of real estate abutting streets to erect safeguards for protection of persons from unsafe places thereon, and (i) cause territory within the municipality to be surveyed and maps to be prepared showing the location and width of streets and a plan for the systematic opening of roads and streets in the future.
Sections 4 and 5 of the instant ordinance obviously have correlative and complementary purposes. The distance specification in section 4 is designed to regulate the number and spacing of streets running in the same direction. That purpose is appropriately relevant to quantitative and cost considerations in rendition of street maintenance and other public services such as police patrolling, garbage and snow *358 removal, etc. The 250-foot distance is not shown to be unreasonable. The prevention of unduly close spacing of streets to each other obviates such a spectacle as the presently proposed Taffy Lane abutting rear yards of homes fronting on the next adjacent street to the north. Section 5 addresses itself more directly to this undesirable condition by requiring streets to have lots fronting on both sides of the street.[1]
We may take judicial notice of the fact that Deal is a small and very well maintained residential community, with homes in the area east of Norwood Avenue ranging from upper middle class to luxurious on generally spacious plots, particularly along and near Ocean Avenue. It is not indicated that there is any appreciable incidence, if any at all, of streets abutting rear yards of homes. This is clearly repugnant to general practices in residential development. It is entirely reasonable for Deal's governing body, in regulating the location and spacing of public streets, to take such factors into account, as presumably here it did, along with other relevant considerations grounded in the public welfare.
We find the street ordinance entirely free from invalidating unreasonableness or absence of power.

III
Plaintiffs make the sweeping attack upon defendants' refusal to approve the map and grant building permits for the lots shown thereon that the municipality is in effect exercising subdivision control  a function assertedly not open to it in view of its failure to have created a planning board in pursuance of the Municipal Planning Act. We regard the argument as ill-founded. The Map Filing Law is applicable *359 in all municipalities, whether or not they have adopted the Planning Act. If a proper refusal to approve the street shown on this map has been made to appear, as we have found to be the case, then any consequent impairment of plaintiffs' proposed subdivision is the consequence solely of the statutory requirement that streets shown on the map be approved by the governing body before municipal approval of the map for filing. That result is in such case improperly characterized as an unpermitted venture by the municipality into a jurisdiction reserved for planning boards operating under the Planning Act.
We find Magnolia Development Co., Inc. v. Coles, supra, relied upon by plaintiffs, not here controlling. There the municipal authorities imposed conditions for grant of approval of a map under the Old Map Act plainly beyond the criteria set forth in the statute. Here the denial of approval is on a ground expressly specified in the act. More to the point is Angermeier v. Sea Girt, 27 N.J. 298 (1958), which rejected a position analogous to that advanced here. The court pointed out that Sea Girt was a small, fully developed community bordering on the Atlantic Ocean, did not need a planning board, and was entirely at liberty to operate without one (at p. 310), without suffering any diminution of the zoning power because of the incidental effect of its exercise in a particular case as appearing to "control subdivision." (at pp. 304, 310-311).
Here, too, Deal is a small and well-developed oceanfront community with relatively little vacant land. Its general right to control and regulate public streets or to adopt reasonable zoning regulations should in no way be regarded as circumscribed by its understandable election not to adopt the Municipal Planning Act.

IV
Finally, plaintiffs without saying so in so many words, suggest that the combined effect of defendants' actions here has been to unreasonably deprive them of the fair use of *360 their property because its size is such as to warrant four building lots rather than the two to which defendants' position restricts them. We do not know whether there is any lawful way, including resort to the board of adjustment, by which plaintiffs can develop their property for four building lots. But we are firm in the view that there is nothing unreasonable about plaintiffs' restriction to two lots if the only possible device to avoid it is the placement of a street in the untoward location where Taffy Lane is shown on the proposed map. Plaintiffs' difficulty is the natural limitations of the tract in view of the proximity of much of its eastern end to the ocean, the absence of a street parallel to Ocean Avenue east of that thoroughfare, and the close proximity of the tract as a whole to Wallace Road. None of these circumstances is attributable to the official actions of defendants here challenged by plaintiffs.
Judgment affirmed.
NOTES
[1] One can anticipate circumstances in which the strict application of this provision would be unreasonable and subject to condemnation by a court, but there is no unreasonableness in the present circumstances. We later deal with the contention that the ordinance unreasonably limits the utility of this tract.