104 N.J. Super. 373 (1969)
250 A.2d 139
ECONOMY ENTERPRISES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, SIDNEY GELLMAN AND BENJAMIN HOCHBERG, PLAINTIFFS-RESPONDENTS,
v.
TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MANALAPAN, IN THE COUNTY OF MONMOUTH, STATE OF NEW JERSEY, AND THOMAS E. HIGGINS, TOWNSHIP CLERK OF THE TOWNSHIP OF MANALAPAN, IN THE COUNTY OF MONMOUTH, STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 1968.
Decided February 7, 1969.
*375 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Marvin E. Schaefer argued the cause for appellants.
Mr. Stewart M. Hutt argued the cause for respondents (Messrs. Hutt & Berkow, attorneys).
The opinion of the court was delivered by KILKENNY, J.A.D.
Defendant governing body of the Township of Manalapan (hereinafter, township committee) appeals from that portion only of a final judgment of the Law Division, which states:
"Article VII `Improvements,' Section 16 `Performance Guarantees,' Subparagraph (a), Subsection 2 of the Manalapan Township Subdivision Ordinance be and is hereby declared void and illegal and for nothing holden."

I
The township committee correctly points out that this portion of the judgment goes beyond the scope of the relief demanded. The entire subsection of the ordinance was declared void and illegal, although many of its requirements are sanctioned by law, admittedly valid and were not challenged by plaintiffs. Only the provisions requiring the owner or developer of a subdivision to make a deposit to secure payment of inspection fees and the obligation to pay such fees were challenged by plaintiff developers.
*376 Among its many parts, article VII, section 16(a)(2) requires that, prior to the submission of the final plat to the planning board. the developer or owner, after obtaining from the township engineer an estimate of the cost of all improvements required for final approval, together with an estimate of any damage to any existing accepted street abutting the proposed subdivision, shall tender to the "governing body" a performance guarantee conditioned upon the completion of the required improvements and for the repair of any damage caused by the owner or developer to existing streets. The performance guarantee must be a cash deposit or cash plus a performance bond, issued by an authorized bonding or surety company. The bond must be approved as to form by the township attorney.
These provisions are sanctioned by the Municipal Planning Act (1953), N.J.S.A. 40:55-1.1 et seq., and particularly by N.J.S.A. 40:55-1.20, 1.21 and 1.22. Plaintiffs do not question their validity, nor do they dispute the required fee of $50 to cover the inspection and approval of the performance guarantee by the township attorney.
The only part of article VII, section 16(a) (2) of the township subdivision ordinance whose validity was questioned by plaintiffs is that which obligates the owner or developer to tender to the governing body, in addition to the performance guarantee, "a fee in cash or a certified check amounting to five per cent (5%) of said estimated cost (of completion of the required improvements and damage) to cover cost of supervision and inspection." There are further provisions that, if the 5% deposit exceeds the amount of money expended by the municipality for the services of the municipal engineer in connection with the project, the excess will be refunded to the developer or owner. On the other hand, if the expenditures exceed the 5% deposit, the developer or owner shall pay the municipality the difference required to cover said expenditures.
These provisions as to the municipal engineer's supervision and inspection fees in overseeing, before final approval of a *377 subdivision plat, the completion of required improvements and the repair of damage caused by the owner or developer, were, as noted above, the only elements in the subject ordinance provision which were litigated, heard and determined by the Law Division.
The trial court's oral decision at the close of the hearing, as to this count of the complaint, based its finding of invalidity solely on the ground that the municipality had no right to charge a 5% fee and then put it "in trust for the engineer," thereby "acting as a collection agency for the engineer." It deemed this "not proper." It found the lack of an appropriation in the budget for this purpose a further bar. Finally, the trial court ruled that "the five percent fee far exceeds the cost that would be incurred by the municipality in paying the engineer a reasonable fee for the services contemplated."
In the recitals in the forepart of the judgment, the trial court noted, as to this phase of the case, only that the challenged section is illegal "in that the engineering charge provided for is excessive."
There was error, therefore, in striking down as void and illegal the entire subsection (article VII, section 16(a) (2)), when only part of it was deemed invalid, if that portion is severable from the remainder. The township committee aptly notes that the township subdivision ordinance contained a severabilty clause. Article XI, section 1 provides:
"If any article, section, subsection, sentence, clause or phrase of this Ordinance is for any reason held to be unconstitutional or invalid, such decision shall not affect the remaining portions of this Ordinance."
Therefore, even assuming the required 5% deposit and the provision for payment of the engineer's fees by the owner or developer were properly deemed to be invalid, the judgment should have been limited to those factors only. There was no valid basis for annihilating the entire subsection by *378 judicial decree. The provisions as to the inspection fees are readily severable from the rest of the subsection.
Thus, modification of the judgment, at least, becomes necessary.

II
The next point made by the township committee is that charging a developer a fee to cover the cost of inspecting improvements required before final approval of a subdivision plat is authorized and not contrary to law. Reliance is placed upon N.J.S.A. 40:48-2 which provides:
"Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law." (Emphasis ours)
Plaintiffs maintain that the Municipal Planning Act (1953), N.J.S.A. 40:55-1.1 et seq., does not authorize the inspection fees. N.J.S.A. 40:55-1.14 authorizes the fixing of "filing fees" and no mention is made of any other fees. They also contend that N.J.S.A. 40:48-2 is not applicable, because the Municipal Planning Act controls and is exclusive. From this they argue that the ordinance provisions as to inspection fees are ultra vires.
We are satisfied that the township had the power under N.J.S.A. 40:48-2 to provide by ordinance for the payment by a land developer of reasonable inspection fees to carry into effect the powers and duties conferred and imposed by the Municipal Planning Act. We feel, too, that a municipality has the implied authority under the Planning Act to require a developer to pay fees broadly correlative with the expenses entailed by it in seeing to the fulfillment of the conditions authorized and imposed prior to final *379 approval of a subdivision plat. The express authority under N.J.S.A. 40:55-1.14 to fix "filing fees" does not negate municipal power to charge reasonable inspection fees, made necessary by the imposition of conditions precedent to final approval. The power to require improvements to be made and damages to public streets to be repaired implies the power to inspect the improvements and repairs to insure satisfaction of the requirements according to the established standards. And the statutory power to exact a bond to guarantee performance of the requirements of the planning board for improvements reasonably may be implemented by inspections of the work done on behalf of the municipality to ascertain whether there is a cause of action on the bond. Cf. Legion Manor, Inc. v. Municipal Council of Wayne Tp., 49 N.J. 420 (1967).
We see no valid reason why the reasonable costs of inspection cannot be recaptured by the governing body in the form of reasonable, uniform fees payable by those whose projects cause the expenditures to be incurred, rather than upon the community as a whole in the form of taxation. The power of imposition of such inspection fees is fairly inferable from the land-subdivision regulative process encompassed by the Planning Act. General municipal powers under N.J.S.A. 40:48-2 reinforce the conclusion that the power in question is fairly within the legislative delegation. See Fred v. Mayor, etc., Old Tappan, 10 N.J. 515 (1952); Kligman v. Lautman, 98 N.J. Super. 344, 356 (App. Div. 1967). Moreover, the Municipal Planning Act and its provisions are to be construed "most favorably to the municipality." The statute expressly so provides. N.J.S.A. 40:55-1.3 also adds: "* * * its intention being to give all municipalities the fullest and most complete powers possible concerning the subject matter hereof." See Levin v. Livingston Tp., 35 N.J. 500 (1961).
In Daniels v. Borough of Point Pleasant, 23 N.J. 357 (1957), it was said:
*380 "Inherent in the power to regulate and control is the power to charge license fees primarily designed to defray the costs of such control. They must not, of course, exceed the bounds of reason considered in connection with the service and the cost of the service granted." (at p. 361)
That language is similarly appropriate in the instant case, substituting only "inspection fees" for "license fees."
Nevertheless, we are constrained to find that portion of the ordinance which directs the manner in which the developer shall compensate the municipality for the expense of inspection to be void as against public policy. As practically interpreted by the municipality, the governing body divorces itself from any function in relation to the process of so-called reimbursement except to the extent that it acts as a dry trustee of the moneys paid into a special account by the developer and funnels such funds out directly to the engineer who did the inspection in relation to the particular development. Actually, the municipality pays the engineer nothing, so that it is really not "reimbursed" for any expense. In effect, the developer pays the engineer directly, and it pays whatever the engineer chooses to charge for his services, uncontrolled by any specific standard fixed by the ordinance.
Under the foregoing arrangement the developer is completely at the mercy of the engineer. The latter is under no restraint save his conscience as to how much to charge the developer. The governing body has no economic incentive to curtail the charges since they do not come out of the municipal treasury. The developer may be loath to take issue with the charges as he may have future problems with the engineer and may not wish to court the possibility of antagonizing him by objecting to the amount of his charge.
Moreover, such an arrangement subjects the engineer to the temptation to overcharge an unfriendly developer or undercharge a friendly one. We, of course, do not imply any such motives to the particular engineer here involved. But the criterion of contravention of public policy in a given case is not the lack of integrity of the particular persons *381 involved but the inherent capacity of the questioned arrangement to tempt toward improper conduct. Cf. Jones v. MacDonald, 33 N.J. 132, 135 (1960).
It is entirely feasible for the municipality to amend its ordinance so as both to eliminate the objectionable practice now followed and yet achieve the object of recovering from developers as a class sums at least roughly correlative with the reasonable cost of administration of the inspection function. This could be done by instituting a scheme of fees on a fixed or mathematically determinable basis wherein the subjective judgment of the engineer as to the value of his services would play no part at all in the determination of the fee. It is not our province to specify any particular plan which would be valid. The many types of licensing ordinance extant illustrate the possibilities. While it may well be that the fees will not in each case exactly reflect the municipal cost of administering the ordinance as to any particular developer, they may be fixed in such manner as, over the long run, to recover in the aggregate approximately the total cost of administration of the ordinance in the respect here involved. Cf. Daniels v. Borough of Point Pleasant, 23 N.J. 357, 361 (1957). Compare the practices in fixing fees for filing a subdivision application under N.J.S.A. 40:55-1.14, mentioned above.
Concomitant with the change in fee-fixing suggested above there would follow the desirable, if not mandatory, result of depositing fees in the municipal treasury in the manner of miscellaneous income generally, and payment of the engineer on a budgeted basis, so that he would not be pocketing directly as compensation the fees paid by the developers. Cf. Espinos v. Monroe Tp., 81 N.J. Super. 283 (App. Div. 1963).
The judgment is modified so as to invalidate only the ordinance provisions for payment of inspection fees. As modified, the judgment is affirmed. No costs.