36 N.J. 258 (1961)
176 A.2d 479
IN THE MATTER OF THE SUSPENSION OR REVOCATION OF THE LICENSES OF ALBERT WESTON AND LIONEL WESTON, TO PRACTICE OPTOMETRY IN THE STATE OF NEW JERSEY. ALBERT WESTON AND LIONEL WESTON, APPELLANTS, AND NEW JERSEY STATE BOARD OF OPTOMETRISTS, RESPONDENT.
The Supreme Court of New Jersey.
Argued November 21, 1961.
Decided December 18, 1961.
*260 Mr. Morton Stavis argued the cause for appellants (Messrs. Gross & Stavis and Messrs. Weston & Kravitz, attorneys).
Mr. William K. Miller, Deputy Attorney General, argued the cause for respondent (Mr. David D. Furman, Attorney General of New Jersey, attorney; Mr. Miller, of counsel).
The opinion of the court was delivered by SCHETTINO, J.
The sole issue before us is the validity of Rule #8 of the New Jersey State Board of Optometrists which requires optometrists to make a minimum examination, hereinafter detailed, before prescribing eyeglasses for a patient.
Appellants had been convicted by the Board of violating Rule #8 and had taken an appeal to the Appellate Division. While the appeal was there pending, we certified it on our own motion. R.R. 1:10-1(a). Appellants there contended that Rule #8 was an invalid regulation and that the Board of Optometrists had discriminated against them in the enforcement of said rule.
At oral argument, we concluded that the record was inadequate to determine these issues. Pursuant to R.R. 4:88-9, we directed the Law Division to take testimony and to make findings of fact on these two issues. Before the Law Division, the Board stipulated that it would dismiss the charges against appellants. Appellants thereupon withdrew the charge of discrimination against the Board, leaving for determination, as stated above, the validity of Rule #8.
The trial court held that Rule #8 is a reasonable and necessary regulation for the protection of the public health, welfare and safety.
Rule #8 states:
"As authorized under Chapter 45:12-11(v); Revised Statutes (Optometry Law), an optometrist shall make a complete minimum *261 examination and shall keep a record of the following conditions of every patient examined:
1. Complete history
2. Naked visual acuity.
3. Detailed report of the external findings.
4. Ophthalmoscopic examination (media, fundus, blood vessels, disc).
5. Corneal curvature measurements (Dioptral).
6. Static Retinoscopy.
7. Amplitude of Convergency and Accommodation.
8. Phoria and duction findings; horizontal and vertical, distance and near.
9. Subjective findings.
10. Fusion.
11. Stereopsis.
12. Color Vision.
13. Visual Fields (confrontation).
14. Visual Fields, central (after age 40).
15. Prescription given and visual acuity obtained."
The statutory authority cited in the regulation provides:
"Prior to prescribing for or providing eyeglasses or spectacles a complete minimum examination shall be made of the patient to determine the correct lenses necessary for such a patient. The requirements of such minimum examination shall be defined by rule or regulation of the New Jersey State Board of Optometrists."
In Abelson's, Inc. v. New Jersey State Bd. of Optometrists, 5 N.J. 412 (1950), we had occasion to deal with portions of the same statute now under review. At the outset we there noted that the practice of optometry is subject to regulation under the police power. Judge (now Justice) Francis in New Jersey State Board of Optometrists v. Koenigsberg, 33 N.J. Super. 387, 391 (App. Div. 1954) further emphasized this fact when he declared that "obviously, there can no longer be any controversy about the legal propriety of * * * prescribing reasonable regulations for the practice of * * * [optometry]." But this power is not without limitation. As we said in Abelson's, Inc., supra (5 N.J., at p. 420), "* * * the nature of the subject matter and the end to be served" will determine both the quality and content of the power.
*262 The Board of Optometrists was created and established by an act entitled "An act to regulate the practice of optometry, to license optometrists, and to punish persons violating the provisions thereof." L. 1914, c. 222; N.J.S.A. 45:12-2. By N.J.S.A. 45:12-4 the Board is charged with effectuating the statutory purposes. The outer limits of the practice of optometry, up to which the statute applies, are defined (in N.J.S.A. 45:12-1) to be "the employment of objective or subjective means, or both, for the examination of the human eye for the purpose of ascertaining any departure from the normal, measuring its power of vision and adapting lenses and prisms for the aid thereof." (Emphasis added.) Rule making power is thereafter delegated to the Board in broad terms with statements indicating the legislative purpose as a standard. N.J.S.A. 45:12-4 states in part:
"The board shall conduct an investigation and ascertain the facts relating to the practice of optometry for the purpose of determining the need for, and the desirability of, rules to promote the safety, protection and welfare of the public and to effectuate the purposes of this chapter and to aid the board in the performance of its powers and duties hereunder, and the board shall thereupon make and promulgate rules and regulations for the said purposes."
Additionally, the Legislature specifically provided that the Board define requirements of a mandatory minimum examination of patients as set forth in N.J.S.A. 45:12-11(v), supra.
Appellants concede that the statutory provision cited in the rule is a valid exercise of legislative authority. But they contend that many of the requirements and aims of Rule #8 are not related to that limited authority because some of the tests prescribed are unnecessary to determine correct lenses for a patient. Appellants then urge that this statute should be narrowly construed and that rules thereunder should be limited to the requisites for determining the correct lenses. They would exclude any of *263 the tests designed to reveal pathological conditions and muscular deficiencies which do not pertain to lenses.
They also contend that their constitutional rights are violated when they, as members of a profession, are directed by the Board "as to the details of the performance of duties," and that not even the Legislature could go that far. For, they say, the effect of Rule #8 is to stifle their right to exercise professional judgment. They allege as additional support for this argument that no similar restrictions are placed upon practices in the legal, medical or other professions. Furthermore, in their opinion the Rule represents an unauthorized imposition on the public in that it has the effect of requiring people to pay to be examined for their health even though the health of others is not involved and, finally, that the Board's probable purpose in promulgating the rule is to establish and maintain high prices in the profession.
Impliedly, appellants would have us disregard all other parts of the optometry statute and base our determination of the rule's validity solely upon the statutory authority cited in the rule. Such contention appears to be based in part upon the belief that an authority cited by the Board would be the only authority a court could look to here. For us to reach such a result, however, would cause the validity of any administrative regulation to turn upon whether or not the agency or board cited the proper statutory section when promulgating a proper rule. We find no necessity for so holding. A rule or regulation should be upheld if there is in fact sufficient underlying authority. Moreover, even if we examine only that statutory section on the theory that it alone was intended to control, there is a basis for upholding the rule.
Administrative rules and regulations have in their support the rebuttable presumption of validity if they come within the ambit of delegated authority. Sherry v. Schomp, 31 N.J. Super. 267 (App. Div. 1954); In re Regulation F-22 of Office of Milk Industry, New Jersey, 32 N.J. 258, *264 261 (1960). Unless they are clearly ultra vires on their face, the person attacking them has the burden of proving otherwise. In re Regulation F-22 of Office of Milk Industry, New Jersey, supra, at pp. 261-262.
Absent any evidence to support appellants' contention, the trial court would thus have had to uphold the validity of Rule #8. Otherwise administrative action would be perpetually hamstrung by the necessity for time-consuming and costly procedures in justification of measures seemingly valid on their face. To overcome the presumption appellants introduced the testimony of three expert witnesses who were of the opinion that a number of the tests in Rule #8 are not helpful in determining the correct lenses for a patient. The Board in turn introduced two experts who testified that each of these tests was a necessary part of a minimum examination to determine the correct lenses for a given patient. In their opinion those tests objected to by appellants are likely to reveal pathology or other deviations from the normal and if any such conditions are uncovered, they must be taken into consideration when determining a patient's needs. They also testified that an optometrist, by education and training, is qualified to perform all the tests. Assuming that all the experts were credible, at best we have here a reasonable difference of opinion. Such a difference of opinion cannot justify a court in holding that there has been an abuse of administrative discretion. City of Newark v. New Jersey Turnpike Authority, 7 N.J. 377, 383 (1951), appeal dismissed 342 U.S. 874, 72 S.Ct. 168, 96 L.Ed. 657 (1951).
Regardless of the assertions that N.J.S.A. 45:12-11(v) is the controlling statutory provision, other sections of the optometry law authorize the Board to promulgate this rule. Subsection (v) of N.J.S.A. 45:12-11 merely provides that at the very least the Board shall prescribe minimum examinations for ascertaining correct lenses. Assuming part of the tests in Rule #8 do not conform to that purpose, N.J.S.A. 45:12-1 and 4 grant *265 the Board the necessary authority. Section 1 defines optometry in part, as the practice of ascertaining departures from the normal in the human eye and section 4 grants the Board wide powers in promulgating rules regulating optometry for the public safety and welfare. Appellants' experts agreed that the tests under attack might lead to the discovery of certain stages of pathological conditions. This fact was even more emphatically confirmed by experts for the Board. Clearly the discovery of such departures from the normal would be in the interests of the public welfare. It is not enough to say that other procedures would be more appropriate to that end. Two Guys from Harrison, Inc. v. Furman, 32 N.J. 199, 218 (1960).
When the Legislature undertook to regulate the practice of optometry it undoubtedly did so in recognition of the specific public interest involved in the treatment of the human eye. Abelson's, Inc., supra, 5 N.J., at p. 419. With this consideration in mind, the protective power of the State cloaks the rule. Optometrists will not be unnecessarily limited in their right to exercise their profession. In fact the rule requires optometrists to exercise most carefully their professional abilities for the benefit of their patients. The public interest far outweighs the inconvenience caused to an optometrist in complying with the rule. As to appellants' contention that no other profession has been so burdened with details, there is no need to regulate all professions alike. Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563, 573 (1955); Semler v. Oregon State Bd. of Dental Examiners, 294 U.S. 608, 610, 55 S.Ct. 570, 79 L.Ed. 1086, 1089 (1935).
The judgment is affirmed without costs.
For affirmance  Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN  7.
For reversal  None.