218 N.J. Super. 74 (1987)
526 A.2d 1125
D.I.A.L. (DISABLED, INFORMATION, AWARENESS & LIVING), A NEW JERSEY NONPROFIT CORPORATION; AND KAREN KORB, PLAINTIFFS-APPELLANTS,
v.
THE CITY OF CLIFTON CONSTRUCTION BOARD OF APPEALS AND JO-CAL ASSOCIATES DEVELOPERS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 4, 1987.
Decided June 5, 1987.
*77 Before Judges PETRELLA, GAYNOR and SCALERA.
David J. Popiel argued the cause for plaintiffs-appellants (David J. Popiel of the Community Health Law Project, attorney, on the brief).
Thomas L. Weisenbeck argued the cause for defendants-respondents, Jo-Cal Associates (Hannoch Weisman, attorneys, Thomas L. Weisenbeck on the brief).
Respondent, City of Clifton Construction Board, through its attorney, Sam Monchak, elected to rely upon the brief and oral argument offered by Jo-Cal Associates.
The opinion of the court was delivered by SCALERA, J.A.D.,
Plaintiffs (hereinafter referred to collectively as D.I.A.L.) appeal from a judgment dismissing their complaint. They originally sought to reverse a decision entered by the City of Clifton Construction Board of Appeals (Board) which exempted the residential condominium project being constructed by Jo-Cal Associates (Jo-Cal) from compliance with legislation mandating design and construction considerations for use by handicapped persons, N.J.S.A. 52:32-4, et seq., (the Act). In addition, D.I.A.L. sought to compel compliance with the regulations known as the Barrier-Free Design Code (the Code), N.J.A.C. 17:19A-1.1, et seq.[1]
*78 On December 16, 1985, the Clifton construction code enforcement official notified Jo-Cal that construction of the condominium project known as Hamilton Woods had to be done in compliance with the Code. This project consists of three buildings, each of which contain 10 residential units. Each building is similarly designed, with five residential units on each of the two levels. Exterior access to four units at each end of a building is accomplished from a common entry level, with steps leading to two units upstairs and to two units downstairs. The middle two units also share a common entry level, with steps leading to one unit above and one unit below. The interior design of each unit is such that many of the rooms are on different levels. Each dwelling unit is separated from every other dwelling unit by both horizontal and vertical fire separation walls. The building site is on a severe slope, affecting the architectural design of both the exterior and interior accommodations.
On December 20, 1985, Jo-Cal applied to the local construction code official for a variation (mistakenly relying on a deleted provision of the Code). When the request for a variation was denied, Jo-Cal appealed to the Board and also requested a total exemption from the Code requirements. It based the latter application on the contention that the severely sloped site conditions and roadway gradients combined to jeopardize the safety of handicapped individuals and to make even initial access for them virtually impossible.
At a hearing before the Board on January 14, 1986, Jo-Cal presented undisputed evidence of the severe topographical conditions at the site which, it argued, prevented practical compliance *79 with the Code. As a result, the Board granted Jo-Cal an exemption from compliance with the Code upon the condition that it make some relatively minor modifications to two of the condominium units, i.e., install outlets at the stairways and at the outside entrance for the future installation of chair lifts and build 30" doorways. The Board's written decision contained only a summary reference to Jo-Cal's recitation of the reasons provided in its application. However, during the hearing the Chairman did observe that the grade of the property did present a hazard to handicapped persons and practically prevented such individuals from visiting or living in the development.
D.I.A.L., in the complaint, alleged that its membership is composed largely of disabled persons, many of whom are residents of Clifton and surrounding communities and that it sought to advance the rights of disabled individuals who require accessible housing. As such, it sought to assure that housing and other types of construction comply with required standards of accessibility.
The complaint further alleged that the Hamilton Woods project is a public building containing more than four family residences and thus is subject to the provisions of the Act and the Code. It asserted that Jo-Cal had wholly failed to comply with the Code since none of the dwelling units as proposed are designed to be barrier-free or minimally accessible to disabled persons. It further asserted that the decision of the Board exempting the project was in violation of the Act. Thus, D.I.A.L. demanded a judgment reversing the Board's decision and compelling Jo-Cal to comply with the Code or to have the construction permits for the Hamilton Woods project revoked.
Jo-Cal, in its answer, took the position that the provisions of the Act and the Code do not apply to the Hamilton Woods project at all and asserted that the Board's action in exempting it from their requirements was correct in all respects. The Board also filed an answer denying that it had acted improperly *80 and asserted that the Act specifically authorizes it to grant such exemptions in cases where practical difficulty or unnecessary hardship is demonstrated.
Thereafter, D.I.A.L. and Jo-Cal filed cross-motions for summary judgment. D.I.A.L.'s motion was based on the fact that the plans and specifications for the Hamilton Woods development failed to accommodate the numerous requirements of the Code. Jo-Cal's cross-motion was predicated on the assertion that it was exempt from complying with the Code because the Hamilton Woods project is not a "public building" within the meaning of N.J.S.A. 52:32-6 and because it consists only of one-to-four family private residences excepted by the Act and the Code since each residence is a self-contained unit separated from similar units by fire separation walls.
The Law Division judge rendered an oral decision on April 18, 1986 in which he granted Jo-Cal's motion for summary judgment. Although he rejected Jo-Cal's argument that Hamilton Woods is not a public building within N.J.S.A. 52:32-6, he found that the project was exempt because the common exterior entranceways did not provide access to more than four dwelling units, each separated from every other unit by a solid, sealed vertical fire separation wall as defined in the Code. See N.J.A.C. 17:19A-1.2(a)1. Thereafter, he denied D.I.A.L.'s application for a rehearing on the ground that each level of the three buildings had distinct vertical fire separation walls which were not connected with the vertical fire separation walls on the level above or below and that these walls might be pierced by utility openings.
D.I.A.L. contends on this appeal that the trial judge misinterpreted the statutory exclusion pertaining to "one-to four-family private residences" contained in N.J.S.A. 52:32-6a. It further alleges that N.J.A.C. 17:19A-1.2(a)1, in purporting to exempt buildings containing numerous dwelling units simply because each unit is separated from similar units by fire separation walls is ultra vires and therefore void. Lastly, it argues that *81 the Hamilton Woods development constitutes a "complex" under the Act rendering it subject to the provisions of the Code even though it consists of a series of two and four-family residences, each of which may be individually exempt.

I.
Initially we address the issue of whether the provisions of the Act and the Code are generally applicable to the Hamilton Woods project. Although Jo-Cal apparently did not file any appeal contesting the local enforcement officer's notification that compliance was necessary, it did attempt to raise the issue before the Board in connection with its application for an exemption. The Board did not deal with the question (and we question their authority to do so) but granted relief under the exemption powers specifically provided for by the statute. N.J.S.A. 52:32-8 and 9. When D.I.A.L. filed its action in lieu of prerogative writs in the Law Division, however, Jo-Cal again raised the issue in its answer through its general denial that it was governed by the Act and the Code and specifically urged this to the Law Division judge as a grounds for dismissal of the complaint. We therefore elect to treat the issue as one available to us for decision. Cf. Kligman v. Lautman, 98 N.J. Super. 344 (App.Div. 1967), aff'd 53 N.J. 517 (1969).
N.J.S.A. 52:32-6a defines "public building" as:
any building, structure, facility or complex used by the general public, including, but not limited to, theaters, concert halls, auditoriums, museums, schools, libraries, recreation facilities, public transportation terminals and stations, factories, office buildings, business establishments, passenger vehicle service stations, shopping centers, hotels or motels, and public eating places, constructed by any State, county or municipal government agency or instrumentality or any private individual, partnership, association or corporation, with the following exceptions: one- to four-family private residences; warehouse storage areas; and all buildings classified as hazardous occupancies....
The conceded purpose of the Act is to insure that proposed construction or remodeling of buildings used by the general public, whether publicly or privately owned or operated, provide facilities for the physically handicapped in order to encourage *82 and promote the movement and rehabilitation of such persons. See Sponsor's Statement, Senate No. 1252 (February 24, 1975).
Although apartment and condominium buildings and the like are not included among the specific examples of public buildings contained in N.J.S.A. 52:32-6a, in our judgment, a reading of the entire paragraph, viewed in light of the general goals of the Act, leads us to the conclusion that the term "public building" is not limited to the examples listed therein. That is to say, larger private residence structures must be deemed to be impliedly included when one notes that the Legislature, by specific language, took care to specifically except, "one- to four-family private residences." We recognize that the statutory phrase, "used by the general public" arguably connotes the concept of building uses other than for private residences. Given the broad purposes of this particular legislation, however, we must construe this phrase differently as it is used here. Thus, any building which, by its proposed use, will otherwise generate unrestricted access by owners, tenants, visitors, employees, guests and the like and consists of more than "one- to four-family private residences" is necessarily included within the scope of the Act. On the other hand, even if a building is to be so "used by the general public," it is exempt if its proposed use consists of the statutorily excepted one to four-family private residences, "warehouse storage" or a "hazardous occupancy." The result obviously represents a conscious compromise between what might be a common understanding of the statutory language discussed and application of the settled principle that enumerated exceptions in a statute indicate a legislative intent that the statute be applied to all cases not specifically exempted. See State v. Reed, 34 N.J. 554, 557 (1961); N.J. State Board Optometrists v. S.S. Kresge Co., 113 N.J.L. 287, 296 (Sup.Ct. 1934), mod. on other grounds and aff'd 115 N.J.L. 495 (E. & A. 1935).
Moreover, the implementing Code, as it existed at the time the building permits for Hamilton Woods were issued, specifically *83 applied to, "apartments, condominiums, dormitories, hotels, motels and all other residential buildings except those listed in N.J.A.C. 17:19A-1.2 ... as being exempt." N.J.A.C. 17:19A-6.1. Since the Legislature chose to amend the Act in 1981, without taking any action indicating its disagreement with the administrative agency's interpretation of the statute we may infer that the agency's construction of the statute conforms with the Legislature's intent. Malone v. Fender, 80 N.J. 129, 137 (1979); Automatic Merchandising Council v. Glaser, 127 N.J. Super. 413, 420 (App.Div. 1974).
The Code defined the phrase "general public" to mean, "employees, visitors or anyone else that may be on the premises for any lawful purpose."[2]N.J.A.C. 17:19A-2.1. Relying on the principle of ejusdem generis, Jo-Cal argues that such language cannot be construed to apply to an owner occupant of a private residence. Aside from the reasons which we have already explained, we feel that application of that principle of construction is misplaced because the regulation in question here simply does not utilize specific words of the same class. Automatic Merchandising Council v. Glaser, supra, at 418; Kushner v. President of Atlantic City Inc., 105 N.J. Super. 203, 210 (Law Div. 1969). In any event, we conclude that under this particular Act it is reasonable to consider that such apartment buildings are public buildings, i.e., buildings accessed by the general public, within the meaning of N.J.S.A. 52:32-6a.
Jo-Cal also attempts to distinguish the Hamilton Woods condominiums from other types of private residences which are "used by the general public." It points to residences such as residential health care facilities, halfway houses, nursing homes, public university dormitories, shelters for the homeless *84 or victims of domestic violence, drug and alcohol treatment facilities, residences for the developmentally disabled, etc. However, neither the Act nor the Code language suggests any such distinction. If the Legislature had intended such a difference to be drawn, we may safely assume that it would have taken some action to indicate its disagreement with the administrative agency's interpretation of the statute as applying to residential condominiums. See N.J.A.C. 17:19A-6.1; Malone v. Fender, 80 N.J. 129, 137 (1979).
Accordingly, we hold that the project here in question was included within the "Public Buildings" coverage of the Act by its definition of structures and buildings designed to accommodate use by the general public whether privately or publicly constructed and affirm the determination of the trial judge in that respect.

II
D.I.A.L. contends that the trial judge misinterpreted the "one- to four-family private residences" exclusion contained in N.J.S.A. 52:32-6a in holding that the Code does not apply to this condominium development simply because each dwelling unit is separated from similar units by fire separation walls and a common exterior entranceway does not provide access to more than four dwelling units.
N.J.S.A. 52:32-4 provides that "all plans and specifications for the construction or remodeling of any public building in the State shall provide facilities for the physically handicapped." The version of the Code that was in effect at the time building permits for Hamilton Woods were issued, N.J.A.C. 17:79A-1.1, et seq., was promulgated by the Department of the Treasury pursuant to the pre-amendment version of N.J.S.A. 52:32-5, which authorized that agency to prescribe the "kinds, types and quality of such facilities for the physically handicapped." N.J.S.A. 52:32-5 (effective October 8, 1975). These regulations were intended to further the Act's purpose of making "buildings *85 used by the general public accessible to, and functional for, the physically handicapped, thus enabling them to live a fuller life more commensurate with that enjoyed by the able-bodied." N.J.A.C. 17:19A-1.1(a). Hence, the Code undertook to specifically define and explain that the Act basically would be applicable to "apartments, condominiums, dormitories, hotels, motels and all other residential buildings except those listed in N.J.A.C. 17:19A-1.2 ... as being exempt." N.J.A.C. 17:19A-6.1(a). As we have already noted, D.I.A.L. agrees with this aspect of the Code. Among the exceptions, however, the regulations provide for, "[o]ne to four family residences" which is defined as a "self-contained unit independently constructed or separated from similar units by party walls, fire walls or fire separation walls." N.J.A.C. 17:19A-1.2(a)1.
D.I.A.L. argues that this particular regulation is invalid because it improperly expands the limited exceptions authorized by the Legislature in the Act. See Service Armament Co. v. Hyland, 70 N.J. 550, 563 (1976). It contends that the regulation purports to further define the excepted residences by references to party walls, fire walls and the like, and as such constitutes an ultra vires act by that administrative agency. Hotel Suburban System v. Holderman, 42 N.J. Super. 84, 90-91 (App.Div. 1956).
Preliminarily, we note what may have been a failure to notify the Attorney General's office of the attack it makes on the regulation here in question as required by R. 2:5-1(e). Such failure alone may be sufficient for us to refuse to consider the issue as properly before us. However, notwithstanding that we have been deprived of the benefit of the Attorney General's response to this allegation, we have nevertheless considered D.I.A.L.'s argument on the merits and find it to be unpersuasive.
It is fundamental that administrative regulations have a rebuttable presumption of validity only if they come within the ambit of delegated authority. In re Weston, 36 N.J. 258, 263 (1961), cert. den. 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 84 *86 (1962). Under the guise of rule-making, an administrative agency may not exceed the authority given to it by statute. Hotel Suburban System v. Holderman, supra, 42 N.J. Super. at 90. This is founded upon the principle that "[t]he authority to classify and exempt rests with the Legislature; it is not an administrative or judicial function." Union Cty. Park Comm. v. City of Union, 154 N.J. Super. 213, 226 (Law Div. 1976), aff'd o.b. 154 N.J. Super. 125 (App.Div. 1977) certif. den. 75 N.J. 531 (1977). Administrative regulations cannot alter the terms of a legislative enactment or frustrate the policy embodied in the statute. N.J. Chamb. Commerce v. N.J. Elec. Law Enforce. Comm., 82 N.J. 57, 82 (1980); Abelson's, Inc. v. N.J. State Board of Optometrists, 5 N.J. 412, 424 (1950).
In enacting the statutory provisions governing the activity under review here, the Legislature undertook to delegate the detailed rule making authority to an administrative agency as it understandably does so often. See Boller Beverages Inc. v. Davis, 38 N.J. 138, 151-152 (1962). Indeed, we have encouraged such agencies to affirmatively exercise the powers delegated to them rather than to await oft-delayed judicial consideration. See Butler Oak Tavern v. Div. of Alcoholic Beverages Control, 20 N.J. 373, 383 (1956). While we are not bound to follow the agency's construction of this statute we are instructed that it is entitled to "substantial weight." Matter of Bd. of Educ. of Town of Boonton, 99 N.J. 523, 534 (1985) cert. den. sub. nom. Kramer v. Public Employees Relations Comm'n, ___ U.S. ___, 106 S.Ct. 1388, 89 L.Ed.2d 613 (1986); Waterfront Comm'n of N.Y. Harbor v. Mercedes Benz, 99 N.J. 402, 415 (1985). In cases where we determine that the regulation does not basically "alter the terms" or "frustrate the policy" of the Act, it may even enjoy the status of having a rebuttable presumption of validity. In re Weston, supra, 36 N.J. at 263.
Viewing the statutory scheme here one discerns a clear legislative intent to ease access to buildings by disabled persons by compelling barrier free designs in all new or remodeled structures which such disabled persons might have occasion to *87 utilize in their daily endeavors in order to ease their plight. However, it is equally clear that the Legislature, in its wisdom, determined that its mandate would not extend to smaller undertakings involving "one to four-family private residences." One of the reasons for such an exception is readily apparent, namely, the prohibitive cost of such construction. Other reasons may exist which are not so readily apparent. Obviously such considerations led the administrative agency here to the conclusion that the act extends only to private residences where the disabled population gains access to more than a "self-contained" four-family unit through a single entranceway.
In other words, it makes sense not to require compliance with costly design modifications to accommodate the physically disabled where the result would be to provide access to a unit where only one, two, three or four families live. However, in contrast, where the entranceway permits access to structures containing larger multiple private residences, the substantial investment in costs required appears more justifiable. Hence, the trial judge's conclusion that there is a distinction based on the number of residences accessed through a single entranceway is reasonable and in accord with the tenor of the statute. A fortiori, an administrative regulation which seeks to implement such a concept inherent in the legislation is not ultra vires.
Moreover, as D.I.A.L. correctly argued concerning the agency's regulatory definition making apartment and condominium buildings subject to the Act in question, (see supra, section I) the regulation's validity is further supportable by our recognition that the Legislature chose not to change it when it amended the act in 1981. Malone v. Fender, 80 N.J. at 137.
D.I.A.L. maintains that such a construction of the Act would permit a private developer to avoid compliance simply by designing their projects and developments with vertical fire walls between each four-unit set of residences and thus escape barrier free construction. Such an argument has appeal when one *88 considers the expressed and salutary purposes of the Act. Even under the broad-based interpretation urged by D.I.A.L., however, a developer could avoid the costly requirement of the Code by resorting to construction of a series of multiple but separated one, two, three or four-unit dwellings on one tract of land. In other words, any person bent on avoiding compliance with the Act may do so rather simply and without doing violence to the specific language in question.
In enacting this statute, the Legislature elected to encourage the construction of projects which would facilitate access by disabled persons whose needs had been overlooked and ignored for many years. Yet, it recognized that there were competing interests to consider and chose to set limits on when such activities would mandate invocation of the Act's provisions. Cf. Burton v. Sills, 53 N.J. 86, 95 (1968) appeal dismissed 394 U.S. 812, 89 S.Ct. 1486, 22 L.Ed.2d 748 (1969). See also Fiscal Note, Senate No. 1252 (February 24, 1975) and Sponsor's Statement, Senate No. 1252 (February 24, 1975). This process has been utilized before. See e.g., N.J.S.A. 45:22A-1, et seq., (regulating retirement communities); N.J.S.A. 55:13A-1 et seq., (regulating hotel and multiple dwellings); and N.J.S.A. 55:13B-1, et seq., (regulating rooming and boarding houses). We will not undertake to alter those limitations. Concerns about frustrating the goals of the Act through such avoidances should be addressed to the Legislature which is uniquely qualified to weigh the rights and concerns of all interested parties and to make an informed value judgment concerning any required amendments consistent with its determinations of those problems. White v. Township of North Bergen, 77 N.J. 538, 554 (1978); Burton v. Sills, supra, 53 N.J. at 95.
In sum, we agree with the trial judge's assessment of the efficacy and interpretation of the Act and the regulations in question that, because of the design allowing stairway access to not more than four dwelling units, which themselves are separated by restricted access vertical walls, the Hamilton Woods *89 buildings are excepted from compliance with the Act and the Code. As noted, we will not undertake to adjudicate a broader or different coverage when the Legislature plainly has chosen not to do so. Cf. State v. Gill, 47 N.J. 441, 444 (1966).

III
Finally, D.I.A.L. contends that Hamilton Woods constitutes a "complex" and is therefore subject to the Code even if this development does consist of a series of two and four family residences, each of which is individually exempt from the Code. The trial judge did not address this argument although it was raised below in D.I.A.L.'s brief there.
N.J.S.A. 52:32-6 defines a "public building" for purposes of the act as "any building, structure, facility or complex used by the general public ... with the following exceptions: one- to four-family private residences...." The term "complex" is not defined in the act.
Assuming arguendo that the Hamilton Woods condominium development can be classified as a "complex", see Perth Amboy Gen'l Hospital v. Perth Amboy, 176 N.J. Super. 307, 312 (App.Div. 1980), certif. den. 87 N.J. 352 (1981), the argument still lacks merit. Although the term "public building" does include a "complex" used by the general public, one- to four-family private residences are expressly excluded notwithstanding that a series of such smaller units may be deemed a complex. N.J.S.A. 52:32-6a. Thus, Hamilton Woods is exempt even if classified as a complex of one to four-family private residences.

IV
Jo-Cal contends that even if the Hamilton Woods development is subject to the Act and the Code, the Board's action granting it an exemption was proper in all respects. D.I.A.L. contends that "[w]hile the trial court did not reach this issue, certifications addressed to the issue were before the court." It *90 argues that the Board erred in granting the exemption at all and that, even if an exemption was warranted, the Board erred in granting a blanket exemption subject only to a relatively insignificant number of minor requirements.
In rendering his oral decision, the trial judge did not discuss in any detail the action taken by the Board but merely concluded that, "... the [C]onstruction Board of Appeal's Ruling would be affirmed." In discussing the form of the order he required that such "... language should be in [it] as well." Thus, the final order specifically provided that, "the decision of defendant Clifton Construction Board of Appeals is affirmed." For that reason we address the issue.
N.J.S.A. 52:32-8 provides that:
In cases of practical difficulty, the enforcing agency may grant exceptions from the specific requirements of the standards and specifications required by this act or permit the use of other methods or materials, but only when it is clearly evident that equivalent facilitation and protection for the physically handicapped are thereby secured.
Exceptions based on practical difficulty or unnecessary hardship, however, are to be applied only to specific requirements of the Code as opposed to a blanket exemption from mandated standards and specifications. N.J.S.A. 52:32-9. Thus, while the Board has the authority to waive or exempt, it may do so only by a consideration and decision affecting each of the Code requirements.
Here, the Board entered a decision exempting Jo-Cal from complying with the Code. However, it completely neglected to address and make any detailed findings to support its conclusion that practical difficulty or unnecessary hardship warranted a blanket exemption or, that equivalent facilitation and protection for the handicapped were "thereby secured." N.J.S.A. 52:32-8. It is true that during the hearing, the chairman made a personal observation that the grade of the property presented a hazard to handicapped persons and, as a practical matter, prevented such individuals from visiting or living in the development. Aside from the unanimous final vote in favor of Jo-Cal, however, there is no indication that the remaining *91 members of the Board shared these views. It thus appears that the Board acted improperly in granting a blanket exemption from all of the standards and specifications mandated by the Act, as opposed to addressing in detail why each specific requirement may have posed practical difficulty or unnecessary hardship to the applicant with respect to this particular site and development. See Application of Howard Sav. Institution of Newark, 32 N.J. 29, 46 (1960); Amato v. Randolph Tp. Planning Bd., 188 N.J. Super. 439, 453 (App.Div. 1982).
Were we compelled to determine this case based on this issue alone, we would feel constrained to remand the matter to the Board for detailed findings and compliance with the statutory provisions which we have noted above. Pitts v. N.J. Racing Comm'n., 185 N.J. Super. 190, 196 (App.Div. 1982); Amato v. Randolph Tp. Planning Bd., supra, 188 N.J. Super. at 453. However, since we have previously determined that the Hamilton Woods development is otherwise properly exempted from compliance with the requirement of the Act and the Code, we regard the issue as moot. Additionally, in light of our disposition of this matter, we see no need to address the other points raised by Jo-Cal in its brief.
Accordingly, we affirm the order of the trial judge in dismissing the complaint in this matter.
NOTES
[1] These regulations, N.J.A.C. 17:19A-1.1, were in effect at the time building permits for this project were issued. N.J.S.A. 52:32-5, which was amended by L. 1981, c. 35, § 1, eff. February 12, 1981, now gives the Department of Community Affairs (DCA) the authority to promulgate regulations which shall prescribe the "kinds, types and quality of such facilities for the physically handicapped." Any regulations concerning facilities for the handicapped adopted by the Department of the Treasury prior thereto were to remain in effect until revised or amended by the DCA. L. 1981, c. 35, § 8. Subsequent to the filing of the instant appeal, a new Barrier-Free Code was adopted on October 10, 1986, with an effective date of November 3, 1986. See 18 N.J.R. 2194(a); N.J.A.C. 5:23-7.1, et seq.
[2] The current Barrier-Free Code which went into effect after this appeal was filed mandates access for the physically handicapped "whether they be in the status of occupant, employee, consumer, student, spectator, participant, or visitor." N.J.A.C. 5:23-7.1.