575 A.2d 1348

MEDICAL SOCIETY OF NEW JERSEY AND NEW JERSEY ASSOCI-
ATION OF OSTEOPATHIC PHYSICIANS AND SURGEONS, RE-
SPONDENTS, v. NEW JERSEY DEPARTMENT OF LAW AND
PUBLIC SAFETY, DIVISION OF CONSUMER AFFAIRS, STATE
BOARD OF PHYSICAL THERAPY, APPELLANT.

Argued February 14, 1990—Decided June 27, 1990.

*Regina H. Nugent,* Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel).

*Steven I. Kern* argued the cause for respondents (*Kern & Augustine,* attorneys).

New Jersey Board of Medical Examiners filed a brief as *amicus curiae.*

The opinion of the Court was delivered by

POLLOCK, J.

At issue in this case is whether the State Board of Physical Therapy (the Board) acted within its delegated authority when it promulgated *N.J.A.C.* 13:39A–2.2(b), which specifies activities that a physical therapist may perform without physician direction. The Appellate Division decided that the rule exceeded the authority delegated to the Board under *N.J.S.A.* 45:9–37.18. 229 *N.J.Super.* 128, 550 *A.*2d 1272 (1988). We granted the Board's petition for certification, 117 *N.J.* 46, 563 *A.*2d 815 (1989), and now reverse.

Few areas of governmental activity affect the public as much as the regulation of health care. Traditional regard for the quality of medical care is now tinged with concerns about its cost. People are no longer treated just in hospitals or at home, but in long-term care facilities, such as convalescent or nursing homes. Health care includes not only medical treatment by a physician or surgeon, but also services provided by others, such as physical therapists. In sum, the delivery of health care is increasingly diverse and costly. So complex and sensitive a system commends itself to legislative and regulatory, rather than judicial, supervision.

Physical therapy, one part of the health-care system, has been a topic of legislative interest since 1903. Currently in New Jersey, over 5,000 physical therapists practice their profession in private offices, institutions, and elsewhere. From the beginning, the Legislature has been concerned about the relationship between physicians and physical therapists.

In 1903, an amendment to the statutes prohibiting the unlicensed practice of medicine exempted a "masseur or electrician * * * operating in each particular case under the specific direction of a regularly licensed physician or surgeon." *L.*1903, *c.* 228. Subsequent amendments over the next eighty years retained the requirement that physical therapists perform under the "specific direction" of a regularly-licensed physician. *See L.*1915, *c.* 271, § 6; *L.*1921, *c.* 221, § 3; *L.*1935, *c.* 226, § 2; *L.*1939, *c.* 115; *L.*1943, *c.* 74; *L.*1944, *c.* 167; *L.*1953, *c.* 420. In 1963, the Legislature first approved a system of examination and registration of physical therapists. The system was administered by the Board of Medical Examiners with the assistance of a Physical Therapy Advisory Committee. That statute retained the restriction that limited physical therapists to providing care "under the specific direction of regularly licensed physicians," *L.*1963, *c.* 169, § 1, a restriction that survived a 1975 change in the definition of "physical therapist," *N.J.S.A.* 45:9–37.1(d). Until 1983, moreover, the statutes consistently defined "physical therapy" in terms of "treatment" only.

In 1983, the Legislature reexamined the regulation of physical therapists and approved the Physical Therapist Licensing Act, *N.J.S.A.* 45:9–37.11 to –37.34 (the Act). The Act replaced long-standing statutes concerning physical therapist licensing and regulation, *Statement of the Senate Labor Industry and Professions Committee*, with a new system. Consistent with increasing independence of physical therapists, the Act created an eleven-member State Board of Physical Therapy, six members of which are to be licensed physical therapists. *N.J.S.A.* 45:9–37.15. Only one place on the Board was reserved for a licensed physician. *Ibid.*

The Act does more than simply create a new board. It recognizes the evolving role of physical therapy in the health-care system. "Physical therapy" is defined as "the health speciality concerned with the prevention of physical disability and the habilitation or rehabilitation of congenital or acquired physical disabilities resulting from, or secondary to, injury or disease." *N.J.S.A.* 45:9–37.13d. Departing from the prior statutory scheme, which spoke of physical therapy as involving only "treatment," the Act defines the practice of physical therapy as including "examination, treatment, or instruction." *N.J.S.A.* 45:9–37.14a. When defining "physical therapist," the Act states that "[a] physical therapist shall provide treatment to an individual upon the direction of a licensed physician, dentist, or other health care practitioner authorized to prescribe treatment." *N.J.S.A.* 45:9–37.13b. In contrast, the Act does not expressly require physician direction for "examination" or "instruction," the other two activities included within the definition of "physical therapy."

As the legislative history reveals, the Act did not have a smooth ride to passage. Originally, Plaintiff Medical Society of New Jersey opposed the Act, but ultimately withdrew its opposition. Plaintiff New Jersey Association of Osteopathic Physicians and Surgeons and the New Jersey Chiropractic Society persisted in their opposition to both the Act and the rule challenged in this action.

Pursuant to statutory authorization, *N.J.S.A.* 45:9–37.18f, the Board promulgated rules defining "examination," "instruction," and "treatment." The rules also specified the conditions under which a physical therapist might render each service. Following the receipt of public comments, the Board published a revised version that included, among other changes, permission to modify a physician's directed physical-therapy treatment only where the modification was consistent with the physician's initial prescription. 18 *N.J.R.* 1177(b). Ultimately, the Board adopted *N.J.A.C.* 13:39A–2.2(b) in its present form:

(b) A licensed physical therapist may engage in the following activities and practices without physician direction.

1. Physical therapy examination, excluding electromyographic testing;

2. Physical therapy instruction;

3. Modification of physical therapy treatment previously initiated upon physician direction provided that the modification is consistent with that physician direction (for example, the physical therapist, in the exercise of his or her discretion, may determine to utilize a variety of modalities to effectuate the direction given by the physician). If the physical therapist wishes to alter a therapeutic plan in a manner not consistent with the initial physician direction, contact must be made with the patient's physician for the purpose of obtaining additional direction.

Other rules, not challenged on this appeal, define "physical therapy examination," which includes "a taking of a patient's history or complaint, a hands-on evaluation or assessment of the objective symptoms presented as well as the utilization of tests and measure to assist the physical therapist in the evaluation of the patient's objective signs and symptoms." *N.J.A.C.* 13:39A–2.1. The rule also defines "physical therapy examination,"[1] "physical therapy instruction,"[2] and "physical therapy

---

[1]"Physical therapy examination" is defined as:

includ[ing] a taking of a patient's history of complaint, a hands-on evaluation or assessment of objective symptoms presented as well as the utilization of tests and measures to assist the physical therapist in the evaluation of the patient's objective signs and symptoms including, but not limited to, the use of tests to assess postural alignment; joint mobility and function; muscle and nerve function, including electrophysiologic status; movement skill; gait; necessity for assistive devices; fit of orthoses and protheses; cardiopulmonary status; sensory and motor function, including related pain and tenderness; and performance of activities required in daily living; but does not include the examination of any persons conducted for the purpose of diagnosing any disease or organic condition. Nothing herein is intended to preclude a physical therapist from conducting an examination within the scope of his practice, consistent with his education credentials or taking a history which is designed to ascertain if contraindications to therapy may be present and thus the referral to a plenary licensed physician is warranted.

[2]The definition of "physical therapy instruction" includes:

the provision of consultative, educational or other advisory services for the purpose of preventing or reducing the incidence and severity of physical disability, bodily malfunction or pain from injury, disease or other physi-

treatment."[3] The definition of "physician direction" describes it as the physician's written prescription "to the extent that the treatment prescribed is within the scope of his or her practice;" countersignature "of the physical therapist's proposed plan of treatment;" or a "[v]erbal [sic] prescription that has been subsequently memorialized in writing."[4]

The Appellate Division invalidated the rule as beyond the Board's authority. Rejecting the Board's division of physical therapy into "three hermetically sealed, water-tight components

---

cal condition or for the purpose of providing information to patients or groups of interested persons regarding the value of physical therapy agents and measures in general or with regard to specific physical conditions. Physical therapy instruction shall not be construed to include activities designed to offer specific therapeutic effect or benefit to a specified person. To the extent that instruction may involve any hands-on contact between the physical therapist and the person receiving physical therapy instruction, that contact shall be for demonstration purposes only.

[3] *N.J.A.C.* 13:39A–2.1 provides that "physical therapy treatment" includes: the administration of physical therapy measures, activities, agents or devices, including but not limited to postural correction; joint mobilization; range of motion exercise; muscle and soft tissue stretching; muscle strengthening exercise; balance and coordination exercises; massage balance and coordination exercises; massage techniques; pre and post-natal exercises; growth and development programs; biofeedback techniques; perceptual training; electrophysiologic tests and modalities; pulmonary hygiene treatment; breathing exercises; postural drainage; gait training; hydrotherapy and parafin bath when used for preventative and therapeutic purposes to correct or limit physical disorders or dysfunctions.

[4] The complete definition of "physician direction" is:

1. Written prescription of a plenary licensed physician, or a dentist or a podiatrist, to the extent that the treatment prescribed is within the scope of his or her practice, or such other health care; practitioner authorized to prescribe treatment;

2. Documentation of physician clearance for the patient for treatment which may include a countersigning of the physical therapist's proposed plan of treatment;

3. Verbal prescription, in person or via telephone, which shall be memorialized by the prescriber in writing within two weeks. But, in no case, will physician direction be construed to have been provided on the basis of a patient's representation that he or she has obtained a physician's clearance.

of physical therapy, *i.e.,* examination, treatment, and instruction," 229 *N.J.Super.* at 135, 550 *A.*2d 1272, the court found no clearly-stated legislative intent to permit examination, instruction, or modification of treatment without physician direction. The court pointed to a long-standing requirement that a physical therapist perform services only on physician direction. *Id.* at 137, 550 *A.*2d 1272. It added that the Legislature had not amended *N.J.S.A.* 45:9–21(k), which exempts a physical therapist operating "under the specific direction of a regularly licensed physician" from the prohibition on the unlicensed practice of medicine. *Ibid.*

Thus, the Appellate Division concluded that the rule represented a "radical recasting of the physical therapist's role," which was beyond the Board's power. The Appellate Division could discern no authorization for the Board's action either in the body of the statute or in the accompanying *Statements of the Senate Labor Industry and Professions Committee* or of the *Assembly Higher Education and Regulated Professions Committee.* 229 *N.J.Super.* at 136–37, 550 *A.*2d 1272. Therefore, the court concluded that the rule was void. We believe that the Appellate Division misread the Act and misconstrued the intent of the Legislature.

I

█ █   An agency rule or regulation is presumptively valid, and anyone challenging such a rule or regulation has the burden of proving its invalidity. *Bergen Pines County Hosp. v. New Jersey Dep't of Human Servs.,* 96 *N.J.* 456, 477, 476 *A.*2d 784 (1984). This presumption of validity attaches if the regulation is within the authority delegated to the agency and is not on its face beyond the agency's power. *In re Weston,* 36 *N.J.* 258, 263–64, 176 *A.*2d 479 *cert. denied,* 369 *U.S.* 864, 82 *S.Ct.* 1029, 8 *L.Ed.*2d 84 (1961). An administrative regulation, however, cannot alter the terms of a statute or frustrate the legislative policy. *New Jersey State Chamber of Commerce v.*

*New Jersey Election Law Enforcement Comm'n.*, 82 *N.J.* 57, 82, 411 *A.*2d 168 (1980). This Court, nonetheless, "places great weight on the interpretation of legislation by the administrative agency to whom its enforcement is entrusted." *Peper v. Princeton Univ. Bd. of Trustees*, 77 *N.J.* 55, 69–70, 389 *A.*2d 465 (1978).

Accordingly, our task is to discern the extent to which the Legislature has delegated authority to the Board. We turn initially to the terms of the Act, which states that "the practice of physical therapy"

> shall include examination, treatment, or instruction to detect, assess, prevent, correct, alleviate and limit physical disability, bodily malfunction and pain from injury, disease or other physical condition.
>
> Physical therapy shall also include the evaluation, administration and modification of treatment and instruction, including, but not limited to, the use of physical measures, activities, agents and devices for preventive and therapeutic purposes; neurodevelopmental procedures; the performance and evaluation of tests and measurements; and the provision of consultative, educational and other advisory services for the purpose of preventing or reducing the incidence and severity of physical disability, bodily malfunction and pain consistent with the practice of physical therapy. [*N.J.S.A.* 45:9–37.14a.]

*N.J.S.A.* 45:9–37.14b adds that this definition does not authorize the unlicensed practice of medicine or diagnosis of disease.

The Act also defines "physical therapist" as:

> a person who is licensed to practice physical therapy pursuant to the provisions of this act. A physical therapist shall provide physical therapy *treatment* to an individual upon the direction of a licensed physician, dentist or other health care practitioner authorized to prescribe treatment. [*N.J.S.A.* 45:9–37.13b (emphasis added).]

As its terms disclose, the Act does not explicitly require a physician's direction for examination or instruction.

■ Our goal in construing the statute is to determine the intent of the Legislature. *AMN v. South Brunswick Township Rent Leveling Bd.*, 93 *N.J.* 518, 525, 461 *A.*2d 1138 (1983). The clearest indication of that intent is the statutory language. *Perez v. Pantasote*, 95 *N.J.* 105, 114, 469 *A.*2d 22 (1984). Consequently, we should try to give effect to every word of the statute, and should not assume that the Legislature used meaningless language. *Gabin v. Skyline Cabana Club*, 54 *N.J.* 550,

555, 258 *A*.2d 6 (1969). Nor should we construe the statute to render part of it superfluous. *Paper Mill Playhouse v. Millburn Township*, 95 *N.J.* 503, 521, 472 *A*.2d 517 (1984); *Peper, supra*, 77 *N.J.* at 68, 389 *A*.2d 465.

As defined in the Act, the "practice of physical therapy" includes examination, instruction, and modification of treatment, as well as treatment itself. *N.J.S.A.* 45:9–37.14a. In defining "physical therapist," the Act requires physician direction when a physical therapist provides treatment. *N.J.S.A.* 45:9–37.13b. The statutory language leads us to conclude that the use of the word "treatment" in both definitions demonstrates the legislative intent to require physician direction for physical-therapy treatment, but not for examination, instruction, or modification of treatment consistent with physician direction.

"Examination," "treatment," and "instruction" are not specifically defined within the statute. Consequently, we accord them their plain meaning. *In re Barnert Memorial Hosp. Rates*, 92 *N.J.* 31, 40, 455 *A*.2d 469 (1983). Each word by its plain meaning describes a distinct activity that constitutes part of the practice of physical therapy. *N.J.S.A.* 45:9–37.14a. In that section, "treatment" plainly does not extend to examination, instruction, or modification of treatment. Although "treatment" is undefined, it should carry the same meaning throughout the statute. *Perez, supra*, 95 *N.J.* at 116, 469 *A*.2d 22. As used in the definition of "physical therapist," *N.J.S.A.* 45:9–37.13b, "treatment" should have the same meaning as it has in *N.J.S.A.* 45:9–37.14a. Just as "treatment" in the latter statute does not include examination, instruction, or modification, neither does it include those activities in *N.J.S.A.* 45:9–37.-13b. The most sensible conclusion is that the Legislature did not intend to require a physical therapist to obtain physician direction to perform examination, instruction, or modification of treatment.

The Appellate Division interpreted "treatment" as used in *N.J.S.A.* 45:9–37.13b to mean all of the activities included in the definition of the "practice of physical therapy" contained in *N.J.S.A.* 45:9–37.14a. *See* 229 *N.J.Super.* at 135, 550 *A.*2d 1272. Such an interpretation, however, renders superfluous other activities in that definition. As previously explained, *supra* at 24, 575 *A.*2d at 1351, such a construction is disfavored. *Peper, supra,* 77 *N.J.* at 68, 389 *A.*2d 465. The Legislature did not declare that a physical therapist could engage in the practice of physical therapy only on direction of a licensed physician. Instead, the Legislature chose language requiring physician direction for treatment, but not for other aspects of the practice of physical therapy. This is not to say that the Legislature could not have extended the sphere of physician direction. We go no further than to say that a fair reading of the statute does not lead to that result.

The differences between the Act and the predecessor statutes corroborate that the Legislature intended to make significant policy changes concerning physical therapy. Before the passage of the Act, the Legislature had continuously retained the requirement that a physical therapist perform his professional activities under "the specific direction" of a regularly licensed physician. *See L.*1915, *c.* 271, § 6; *L.*1921, *c.* 221, § 3; *L.*1935, *c.* 226, § 2; *L.*1939, *c.* 115; *L.*1943, *c.* 74; *L.*1944, *c.* 167; *L.*1953, *c.* 420.

In 1975, the Legislature amended the definition of "physical therapist" to refer to "a person who practices physical therapy, under the direction and supervision of a licensed physician, or a person who renders physical therapy services upon the direction of a licensed physician." *L.*1975, *c.* 185, § 1. This same amendment redefined "physical therapy" so that it would

mean and include *treatment* of a human being by the use of exercise, massage, heat, cold, water, radiant, energy, electricity, or sound for the purpose of correcting or alleviating any physical condition or preventing the development of any physical disability; or the performance of appropriate tests and measurements, authorized by the State Board of Medical Examiners, to assess the

extent of body malfunction, provided, however, that physical therapy shall not include radiology or electrosurgery. [*Id.* (emphasis added).]

The 1983 Act plainly defines the "practice of physical therapy" to expand unsupervised activities of physical therapists. As indicated, the Act requires physician direction for only one of those activities, treatment. By contrast, the 1975 Act, which defined "physical therapy" exclusively in terms of treatment, required physician direction for all such therapy. This change, which grants physical therapists greater freedom to perform without physician direction, demonstrates a legislative intent to change the law. *Elberon Bathing Co. v. Ambassador Ins. Co.*, 77 *N.J.* 1, 18, 389 *A*.2d 439 (1978). The plain meaning of the Act, coupled with its substantial expansion of unsupervised activities, persuades us that the Board's rule is within the scope of its delegated authority.

Nor are we inclined to invalidate the rule because of the long-standing statutory ban on therapists from practicing medicine. *N.J.S.A.* 45:9–21(k). The Act is a specific statute devising a precise regulatory scheme for physical therapists. By contrast, *N.J.S.A.* 45:9–21(k) merely carves out an exception from the general statute banning the unlicensed practice of medicine. As the more specific legislative declaration, the statute regulating physical therapists must prevail over the more general statute pertaining to the unlicensed practice of medicine. *Goff v. Hunt*, 6 *N.J.* 600, 607, 80 *A*.2d 104 (1951).

Arguably, the Board's rule falls under both the definition of "physical therapy" and of "medicine." As previously indicated, if the Board's regulation is within the scope of its delegated authority, then it is presumptively valid. *In re Weston, supra*, 36 *N.J.* at 263–64, 176 *A*.2d 479. Plaintiffs have not attacked that presumption. Instead, they have challenged the regulation as beyond the Board's authority, both before the Appellate Division, 229 *N.J.Super.* at 133, 550 *A*.2d 1272, and before this Court. Because the rule is within the Board's delegated authority, it is presumptively valid.

## II

As noted, *supra* at 21, 575 *A.*2d at 1349–1350, *N.J.A.C.* 13:39A–2.1 permits a physical therapist to examine a patient without physician referral. This examination may include taking a patient's history, assessing the objective symptoms, and using "tests and measures to assist the physical therapist" in making that assessment. *N.J.A.C.* 13:39A–2.1. The rule specifically excludes examination "for the purpose of diagnosing disease or organic condition." Thus, the rule does not permit physical therapists, under the guise of conducting an "examination," to perform activities beyond their statutory authority. Contrary to plaintiffs' contention that the rule permits a therapist to begin unauthorized treatment, it literally forbids a physical therapist to "institute treatment without physician direction." *N.J.A.C.* 13:39–2.2b. Furthermore, the definition of "physical therapy examination," *N.J.A.C.* 13:39–2.1, plainly prohibits a physical therapist from making a diagnosis.

We are not persuaded by plaintiffs' contention that allowing a physical therapist to perform an examination will necessarily lead to the incursion of two fees, one for the therapist and another for the doctor. When, for example, physical therapists are on the premises of a long-term care facility, their examination might enable them to alert the physican to the need for a visit, examination, or prescription of therapy for the patient. In addition, after beginning to administer therapy, a physical therapist might perform an examination that could help him or her ascertain whether the therapy is achieving its intended result.

Likewise, we are unpersuaded that the rule exceeds the statutory limits by authorizing a physical therapist to modify treatment consistent with physician direction. In fact, the rule is more restrictive than the statute, which by its terms permits a physical therapist to modify treatment without any mention of a requirement that the modification be consistent with the initial physician direction.

Finally, we reject plaintiffs' argument that the rule permits instruction to patients on the "use of physical therapy to relieve specific conditions, all without physician review, examination, or supervision." The language of *N.J.A.C.* 13:39A–2.1, which defines "physical therapy instruction," is to the contrary. That definition explicitly declares that "[p]hysical therapy instruction shall not be construed to include activities designed to offer specific therapeutic effect or benefit to a specified person." The definition of "physical therapy instruction" merely permits a physical therapist to provide generalized information to groups of people, an activity that plaintiffs concede a physical therapist may properly perform. Like the Act, however, the rule prohibits the physical therapist from giving specific instruction that might also be considered treatment.

We conclude that *N.J.A.C.* 13:39A–2.2(b) is facially valid. Consequently, we reverse the judgment of the Appellate Division.

*For reversal*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.