875 A.2d 247

NEW JERSEY ASSOCIATION OF NURSE ANESTHETISTS, INC., APPELLANT–APPELLANT, v. NEW JERSEY STATE BOARD OF MEDICAL EXAMINERS, RESPONDENT–RESPONDENT.

NEW JERSEY STATE SOCIETY OF ANESTHESIOLOGISTS, RESPONDENT–INTERVENOR.

Argued May 3, 2005—Decided June 29, 2005.

606

*Alma L. Saravia* argued the cause for appellant (*Flaster Greenberg,* attorneys; *Ms. Saravia* and *Vincent J. Nolan III,* of counsel and on the briefs).

*Sharon M. Joyce,* Assistant Attorney General, argued the cause for respondent (*Peter C. Harvey,* Attorney General of New Jersey, attorney; *Michael Haas,* Assistant Attorney General, of counsel).

*Joseph M. Gorrell* argued the cause for respondent-intervenor (*Wolf, Block, Schorr & Solis–Cohen,* attorneys; *Mr. Gorrell* and *John D. Fanburg,* of counsel; *Mr. Gorrell* and *Richard B. Robins,* on the briefs).

*Stephen M. Eisdorfer* argued the cause for *amicus curiae* American Association of Nurse Anesthetists (*Hill Wallack,* attorneys).

*Robert J. Conroy* argued the cause for *amicus curiae* The Medical Society of New Jersey (*Kern Augustine Conroy & Schoppmann,* attorneys).

*Brian Miller Adams* submitted a brief on behalf of *amicus curiae* American Federation of Teachers (*Canellis & Adams,* attorneys).

*Richard E. Shapiro* submitted a brief on behalf of *amicus curiae* American Nurses Association (*Mr. Shapiro,* attorney; *Alice J. Bodley,* a member of the District of Columbia bar and *Winifred Y. Carson–Smith,* a member of the Pennsylvania bar, on the brief).

*Evan William Jahos* submitted a brief on behalf of *amicus curiae* New Jersey State Nurses Association (*Jahos, Broege & Shaheen,* attorneys).

*Leon B. Savetsky* submitted a brief on behalf of *amicus curiae* Health Professionals and Allied Employees, AFT, AFL–CIO (*Loccke & Correia,* attorneys).

*Scott T. Kragie,* a member of the Ohio and District of Columbia bars, submitted a brief on behalf of *amicus curiae* American Society of Anesthesiologists (*Kalison McBride Jackson & Murphy,* attorneys).

PER CURIAM.

The background of this case is set forth in detail in the Appellate Division's decision. *N.J. State Ass'n of Nurse Anesthetists, Inc. v. N.J. State Bd. of Med. Exam'rs,* 372 *N.J.Super.* 554, 859 *A.*2d 1239 (App.Div.2004). For our purposes, the following facts are relevant. In May 1997, the State Board of Medical Examiners (BME) proposed regulations, later codified at *N.J.A.C.* 13:35–4A.1 to –4A.18, setting forth standards for the administration of anesthesia during surgery performed in a physician's office.[1] The proposal established that anesthesia could be administered only by physicians meeting certain standards or by Certified Registered Nurse Anesthetists (CRNAs) under the supervision of a physician meeting the standards. The physician administering or supervising the administration of anesthesia was required, depending on the type of anesthesia,[2] to meet additional educational or certification requirements.

In particular, "[D]uring every consecutive three-year period beginning July 1, 2004," a physician administering or overseeing the administration of general anesthesia must "complete[ ] at least [sixty] Category I hours of continuing medical education in anesthesia ... [,]" *N.J.A.C.* 13:35–4A.8(a)(1); a physician administer-

---

[1] Those standards are not applicable in hospitals or ambulatory care settings.

[2] The regulations deal with three categories of anesthesia: general, regional and conscious sedation. See *N.J.A.C.* 13:35–4A.3 (setting forth definitions necessary for interpreting the regulation). "General anesthesia" is defined as "the administration of a drug ... which cause[s] loss of consciousness as the result of which the patient is unable to make meaningful responses but may still display reflex withdrawal from a painful stimulus." *Ibid.* "Regional anesthesia" is defined as "the administration of anesthetic agents to a patient to interrupt nerve impulses without loss of consciousness and includes epidural, caudal, spinal and brachial plexus anesthesia." *Ibid.* The definition of "conscious sedation" is "the administration of a drug ... in order to induce that state of consciousness in a patient which allows the patient to tolerate unpleasant medical procedures without losing defensive reflexes, adequate cardio-respiratory function and the ability to respond purposefully to verbal command or to tactile stimulation if verbal response is not possible as, for example, in the case of a small child or deaf person." *Ibid.*

ing or overseeing the administration of regional anesthesia must "complete[ ] at least eight Category I hours of continuing medical education in anesthesia exclusively, or in anesthesia as it relates to the physician's field ... [,]" *N.J.A.C* 13:35–4A.9(a)(1); and a physician administering or overseeing the administration of conscious sedation must "complete[ ] at least eight Category I or II hours of continuing medical education in any anesthesia services, including conscious sedation exclusively, or in anesthesia as it relates to the physician's field of practice...." *N.J.A.C.* 13:35–4A.10(a)(1).

During a CRNA's administration of general and regional anesthesia, "the supervising physician" must "be physically present and available to immediately diagnose and treat the patient in an emergency without concurrent responsibilities to administer anesthesia or perform surgery...." *N.J.A.C.* 13:35–4A.8(c); *N.J.A.C.* 13:35–4A.9(c)(punctuation omitted). With respect to the administration of conscious sedation, "the supervising physician shall be physically present, but may be concurrently responsible for patient care." *N.J.A.C.* 13:35–4A.10(d).

On June 15, 1998, the BME adopted the regulations. Further proceedings regarding privileging followed, resulting in the adoption of alternative privileging procedures on November 13, 2002. *N.J.A.C.* 13:35–4A.12. The BME withheld implementation of the supervision requirements during the pendency of the privileging issues.

The New Jersey State Association of Nurse Anesthetists (NJANA) appealed, and the Appellate Division stayed implementation of the regulations pending the outcome of the case. On appeal, NJANA argued that the promulgation of *N.J.A.C.* 13:35–4A.1 to – 4A.18 was an *ultra vires* incursion on the nursing profession and that the regulations lacked any factual support, thus rendering them arbitrary.

The Appellate Division rejected those conclusions based, among other things, upon the scope of the BME's authority over the practice of medicine, the presumption of validity of administrative

regulations, the deference granted to an administrative agency decision, and the legitimate distinctions between the training of physicians and CRNAs.

We have carefully reviewed this record in light of the claims advanced by the parties and the *amici* and have concluded that the Appellate Division's reasoning is unassailable. We therefore affirm substantially for the reasons expressed in Judge Alley's thorough and thoughtful opinion.

We add only the following comments. We are well aware, as was the Appellate Division, that *N.J.S.A.* 13:35–4A.1 to –4A.18 has a significant effect on the autonomy and economic life of CRNAs. We likewise acknowledge that the questions of whether the goals underlying the rule outweigh those consequences, or could be achieved at less cost to the CRNAs, are open to debate.

 However, when a case comes to us on appeal from the promulgation of a rule by an administrative agency, it is important to understand that we are not called upon to assess the wisdom of the agency's decision, but only its legality. *See N.J. State League of Municipalities v. Dep't of Cmty. Affairs,* 158 *N.J.* 211, 222, 729 *A.*2d 21 (1999) ("a reviewing court is not to substitute its judgment for that of the agency"); *see also Dougherty v. Dep't of Human Servs.,* 91 *N.J.* 1, 6, 449 *A.*2d 1235 (1982) (acknowledging wide discretion agencies possess in performing delegated functions). Our function is to rule on whether the subject matter falls within the substantive authority delegated to the agency and whether the rule was enacted in accordance with applicable legal principles. *See Med. Soc'y of N.J. v. N.J. Dep't of Law and Pub. Safety,* 120 *N.J.* 18, 26, 575 *A.*2d 1348 (1990) (stating Court's task is to discern extent to which Legislature has delegated authority to agency); *see also In re Weston,* 36 *N.J.* 258, 263, 176 *A.*2d 479 (1961) ("Administrative rules and regulations have in their support the rebuttable presumption of validity if they come within the ambit of delegated authority."), *cert. denied,* 369 *U.S.* 864, 82 *S.Ct.* 1029, 8 *L.Ed.*2d 84 (1962).

■ In sum, our mission in this case is to determine whether the challenged rule fell within the legal authority of the BME and whether there was a basis for its enactment. That is, for all intents and purposes, a narrow role that the Appellate Division fully understood when it addressed the authority of the BME to act:

> In our view, the administration of anesthesia is, in fact, the "practice of medicine" since it is used in the treatment of "human ailment, disease, pain, injury, [or] deformity." *N.J.S.A.* 45:9–5.1. It is undeniable that *N.J.A.C.* 13:35–4A *et seq.*, has an indirect impact on the CRNA[s'] profession, yet the point remains that the BME is not regulating the nursing profession, but rather the physicians who offer anesthesia in an office setting. Here, the regulation is directed at ensuring that physicians offering anesthesia services in their offices, as well as those supervising the administration of anesthesia, possess certain credentials. Thus, the challenged regulation falls squarely in the BME's core jurisdiction, the licensing and qualifications of physicians, and how they perform their professional services.
>
> [*N.J. State Ass'n of Nurse Anesthetists, supra,* 372 *N.J.Super.* at 566, 859 *A.*2d 1239.]

There is no principled basis upon which we can disagree with those conclusions.

■ Equally unavailing is the CRNAs' claim that the BME's action was arbitrary due to the lack of evidence that the regulations will enhance the safety of anesthesia patients. At the root of the CRNAs' argument is that the Pine study, which they proffered, suggests that there is no difference in outcome when physicians and CRNAs administer anesthesia. The Pine study, however, assessed anesthesia administration in a hospital setting where emergency help is always available. In contrast, the wealth of testimony adduced at the public hearings on the regulations supported the need for enhanced education and oversight. Furthermore, it is fundamentally reasonable that additional education and training would enable anesthesiologists administering or overseeing anesthesia better to protect patients and to respond when complications occur. We therefore cannot say that the CRNAs overcame the presumption of validity of the regulations.

Affirmed.

*For affirmance*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.