NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5176-13T1

IN THE MATTER OF THE NEW JERSEY
MARITIME PILOT & DOCKING PILOT
COMMISSION'S DETERMINATION
REGARDING EXAMINATION REQUIREMENT
FOR LICENSURE OF NEW JERSEY
DOCKING PILOTS

> APPROVED FOR PUBLICATION
>
> December 29, 2015
>
> APPELLATE DIVISION

Argued November 30, 2015 — Decided December 29, 2015

Before Judges Messano, Simonelli and Sumners.

On appeal from the adoption of N.J.A.C. 16:64-9.4(d) by the New Jersey Maritime Pilot & Docking Pilot Commission.

Kellen F. Murphy argued the cause for appellants Jeremy Harris and McAllister Towing & Transportation (Riker Danzig Scherer Hyland & Perretti, LLP, attorneys; Stuart M. Lederman, of counsel and on the briefs; Diane N. Hickey, on the briefs).

David M. Kahler, Deputy Attorney General, argued the cause for respondent New Jersey Maritime Pilot & Docking Pilot Commission (John J. Hoffman, Acting Attorney General, attorney; Lisa A. Puglisi, Assistant Attorney General, of counsel; Elaine C. Schwartz, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

SIMONELLI, J.A.D.

Appellant Jeremy Harris, a docking pilot apprentice, and his employer, appellant McAllister Towing & Transportation (McAllister), a maritime towing and transportation company, challenge the validity of a regulation adopted by respondent New Jersey Maritime Pilot & Docking Pilot Commission (Commission), which requires docking pilot apprentices to take an examination before licensure as a docking pilot. On appeal, appellants contend that the examination requirement is inconsistent with the New Jersey Maritime Pilot and Docking Act (Act), N.J.S.A. 12:8-1 to -53, which has no examination requirement for docking pilot apprentices, contrary to the Legislature's intent to omit such a requirement, and transgresses the Commission's enabling legislation.

Alternatively, appellants contend that the examination requirement is arbitrary, capricious and unreasonable because the regulation fails to articulate clear regulatory standards. We reject all contentions and hold that the regulation is valid.

We begin with a review of the relevant authority. The Act governs two categories of pilots: maritime pilots, who pilot

vessels in pilotage waters,[1] N.J.S.A. 12:8-1.2; and docking pilots, who dock or undock vessels; navigate vessels within the harbor to and from anchorages or berths; navigate vessels entering the Port of New York and New Jersey upon relieving the maritime pilot; and navigate vessels departing the port until relieved by the maritime pilot. N.J.S.A. 12:8-53(a)(1)-(2).

The State did not regulate docking pilots prior to enacting the Act in 2004. See L. 1837, c. 61 (regulating maritime pilots). In the aftermath of the terrorist attacks on September 11, 2001, the Legislature found and declared that:

> The State of New Jersey has responsibility for port security in the Port of New York and New Jersey and, pursuant to federal law, has the right and responsibility to regulate maritime pilotage in the port.

---

[1] "Pilotage waters" are defined as follows:

> boundary waters of the states of New Jersey and New York, ports on those boundary waters, the Sandy Hook, Raritan, Upper and Lower Bays of the Port of New York and New Jersey; the rivers Raritan, Hackensack, Passaic and Shrewsbury, Newark Bay, Arthur Kill, Kill van Kull, the Bar at Sandy Hook and waters easterly of the Bar on which regulated vessels navigate when entering or departing the port of New York and New Jersey, ports south of Sandy Hook to Atlantic City and waters easterly of these ports which regulated vessels navigate when entering or departing these ports.
>
> [N.J.S.A. 12:8-1.2.]

A-5176-13T1

. . . .

> Although efforts have been made to enhance the defense of the New York and New Jersey port area from terrorist attacks and to implement improved immigration and customs procedures, modernization and clarification of New Jersey's laws relating to those who pilot and dock foreign and domestic vessels have not yet occurred.
>
> There is a need to provide for a system that will ensure the proper and consistent identification, training, selection, oversight and monitoring of both maritime pilots and docking pilots.
>
> [N.J.S.A. 12:8-1.1(a), (c) and (d) (emphasis added).]

The Legislature also declared it was in the public interest "to modernize, clarify, revise and expand New Jersey's maritime pilotage laws, and to strengthen the New Jersey pilotage [C]ommission by expanding its powers and duties and clarifying that docking pilots are under its jurisdiction[,]" N.J.S.A. 12:8-1.1(e), and "that the [C]ommission be charged with the concurrent responsibility to ensure the safe operation and navigation of vessels, to protect the environment and enhance the economic viability of the port." N.J.S.A. 12:8-1.1(f).

In accordance with this legislative intent, the Legislature granted the Commission regulatory authority over maritime pilots, docking pilots and maritime and docking pilot

apprentices. See N.J.S.A. 12:8-1 to -53. The Legislature also granted the Commission authority to

> make and establish such rules, orders and regulations, in accordance with the "Administrative Procedure Act," [N.J.S.A. 52:14B-1 to -31], not inconsistent with the constitutions or the laws of this state or of the United States, for the better government of the maritime pilots, docking pilots, and apprentices, as defined in [N.J.S.A. 12:8-1.2], to ensure safe operation of vessels and safe navigation, and to ensure the most current and exacting levels of training and may provide for such fines and penalties for the violation of these rules, orders and regulations, as it shall deem proper. [The Commission] may from time to time revoke or amend any such rule, order or regulation.
>
> [N.J.S.A. 12:8-2 (emphasis added).]

The Act established the licensure requirements for maritime pilots. N.J.S.A. 12:8-9 to -21. To obtain a maritime pilot license, the applicant must serve an apprenticeship for four years or longer, N.J.S.A. 12:8-11, and pass an examination approved by the Commission, which "examines the applicant's knowledge of the tides, soundings, bearings and distances of the several shoals, rocks, bars and points of land, and such other matters deemed by the [C]ommission as relevant to the safe navigation of vessels in the navigation for which the applicant applies for a license." N.J.S.A. 12:8-14.

The Act also established the licensure requirements for docking pilots. N.J.S.A. 12:8-49 to -53. To obtain a docking pilot license, an applicant must satisfy the documentary requirements set forth in N.J.S.A. 12:8-50 as well as the following requirements:

> a. Perform[] at least 25 dockings or undocking movements of vessels not less than 10,000 gross tons on pilotage waters assisted by a tugboat or tugboats on routes for which the applicant applies to be licensed as a docking pilot under the supervision of a docking pilot;
>
> b. Observe[] not less than 200 dockings or undockings of seagoing vessels of not less than 10,000 registered tons on pilotage waters assisted by a tugboat or tugboats under the close supervision of a docking pilot;
>
> c. Successfully complete[] a docking pilot apprentice program approved by the [C]ommission prior to application to the [C]ommission for licensing as a docking pilot; and
>
> d. Submit[] an application to the [C]ommission for review and approval.
>
> [N.J.S.A. 12:8-51.]

The Act neither requires nor prohibits an examination for docking pilot apprentices as a condition for licensure.

Pursuant to N.J.S.A. 12:8-2, in 2005, the Commission adopted regulations establishing a maritime pilot apprenticeship program. N.J.A.C. 16:64-2.1 to -2.7. The program requires a

maritime pilot apprentice to complete a four-year apprenticeship, during which the apprentice must satisfy the requirements set forth in N.J.A.C. 16:64-2.3 and -2.4. After completing those requirements, the apprentice must take and pass a written examination prescribed by the Commission, which "shall test the apprentice's qualifications for employment as a maritime pilot and knowledge of pilotage routes." N.J.A.C. 16:64-2.7(a). The apprentice must achieve a passing grade of "70 percent on all written sections, except Rules of the Road, which shall be 90 percent. Any charts drawn by the apprentice shall be graded on a pass/fail basis." N.J.A.C. 16:64-2.7(c).

In 2006, the Commission adopted rules and regulations establishing a docking pilot apprenticeship program. N.J.A.C. 16:64-9.1 to -9.6 (2006).[2] The program requires a docking pilot apprentice to complete a minimum two-year apprenticeship and satisfy the following requirements:

> 1. Observe a minimum of 200 dockings, undockings, or in-harbor movements assisted by a tugboat or tugboats on the bridge of a ship not less than 10,000 gross tons in pilotage waters, at least 50 of which shall be done during hours of darkness. With respect to each such docking, undocking, or movement, the docking pilot apprentice shall

---

[2] Recodified as N.J.A.C. 16:64-5.1 to -5.6 and amended by R. 2014, d. 116, effective July 21, 2014. We shall refer herein to the regulations in effect on July 14, 2014, the date this appeal was filed.

remain on the bridge of the ship during the entire time the ship is being piloted by a docking pilot. If, in the judgment of the docking pilot, the docking pilot apprentice possesses the requisite skill to conduct a docking, undocking, or transit under supervision of the docking pilot, the docking pilot may permit the apprentice to do so;

2. After meeting the requirements of (c)1 above to the satisfaction of a docking pilot, complete a minimum of 25 dockings, undockings, or in-harbor movements, on pilotage waters, assisted by a tugboat or tugboats, of ships not less than 10,000 gross tons while under the supervision of a licensed docking pilot, at least 25 percent of which shall be performed during hours of darkness.

i. With respect to each docking and undocking, the apprentice shall, under the supervision of a docking pilot, pilot the ship to the satisfaction of a docking pilot;

3. Observe from the bridge the anchoring of 20 vessels and the raising of anchor of 20 vessels of not less than 10,000 gross tons in pilotage waters;

4. Provide written documentation signed by the docking pilot under whose authority the apprentice is working, of the movements required by (c)1 through 3 above, on a form proscribed by the Commission;

5. Comply with the annual medical examination requirements in N.J.A.C. 16:64-7.4;

6. Make annual appearances before the Commission to review the docking pilot apprentice's education, training, progress, and state of health[.]

A-5176-13T1

[N.J.A.C. 16:64-9.4(c).]

After completing these requirements, the apprentice must "sit for an examination conducted and approved by the Commission." N.J.A.C. 16:64-9.4(d). A 2009 amendment required apprentices to achieve a passing grade of "70 percent on all written sections, except Rules of the Road,[3] which shall be 90 percent. Any charts drawn by the apprentice shall be graded on a pass/fail basis." N.J.A.C. 16:64-9.4(e). No one challenged N.J.A.C. 16:64-9.4(d) or (e) during their respective comment periods. See 36 N.J.R. 4305(a), 41 N.J.R. 4455(a).

On October 29, 2013, the Commission notified Harris that he was placed on the docking pilot apprentice list and that once appointed, he must complete the docking pilot apprenticeship program and successfully pass an examination. The Commission notified Harris that the examination

> includes five modules covering the following areas:
>
> I. Laws and Regulations of the Commission and the United States Coast Guard
>
> II. Rules of the Road, including, the International Regulations for Preventing Collisions at Sea (COLREGS) and the Inland Navigation Rules

---

[3] N.J.A.C. 16:64-1.3 defines "Rules of the Road" as "the International Regulations for Preventing Collisions at Sea, 1972, [] 33 U.S.C.A. § 1602 and/or the Unified Inland Rules, 33 U.S.C.A. §§ 2001-71."

III. Navigation and Seamanship (ship maneuvering and handling)

IV. Local Knowledge and Piloting specific to the Port of New York/New Jersey

V. Practical Piloting

In March 2014, the Commission appointed Harris as a docking pilot apprentice. He declined to take the examination and instead, he and McAllister filed the present appeal. On appeal, they do not contend that some of the requirements in N.J.A.C. 16:64-9.4 exceed the requirements in N.J.S.A. 12:8-51. Rather, they parse-out subsection (d), contending that because the Act only requires an examination for maritime pilot apprentices, the examination requirement for docking pilot apprentices is contrary to the Act, contrary to the Legislature's intent to omit such an examination requirement, and transgresses the Commission's enabling legislation.

Alternatively, Harris and McAllister contend that the examination requirement is arbitrary, capricious and unreasonable because the regulation fails to articulate regulatory standards related to the examination requirements for docking pilot apprentices. They argue that the Commission improperly vested itself with the discretion to determine the content and administration of such examination without

substantive guidance in the regulations to ensure that the examination is consistent with the Act.

"Agency regulations are accorded a presumption of validity and reasonableness." In re N.J.A.C. 7:1B-1.1, 431 N.J. Super. 100, 114 (App. Div.), cert. denied, 216 N.J. 8 (2013). "Although not bound by an agency's determination on a question of law, [we] give great deference to an agency's interpretation of statutes within its scope of authority and its adoption of rules implementing the laws for which it is responsible." Id. at 114-15 (citations omitted); see also In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488-89 (2004). "'This deference comes from the understanding that a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise.'" In re N.J.A.C. 7:1B-1.1, supra, 431 N.J. Super. at 115 (quoting N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 549 (2012)). Deference is particularly appropriate where, as here, the agency must construe and implement a new statute. In re N.J.A.C. 7:26E-1.13, 377 N.J. Super. 78, 98-99 (App. Div. 2005), aff'd o.b., 186 N.J. 81 (2006).

We have held that

> when reviewing an administrative agency's promulgation of a rule, it is not our

> function to assess the wisdom of the agency's decision, but only its legality. Our function is to rule on whether the subject matter falls within the substantive authority delegated to the agency and whether the rule was enacted in accordance with applicable legal principles.
>
> [In re N.J.A.C. 7:1B-1.1, 431 N.J. Super. at 115 (quoting N.J. Ass'n of Nurse Anesthetists, Inc. v. N.J. State Bd. of Med. Exam'rs, 183 N.J. 605, 610 (2005)).]

"Consequently, '[i]n reviewing agency action, the fundamental consideration is that [we] may not substitute [our] judgment for the expertise of an agency so long as that action is statutorily authorized and not otherwise defective because arbitrary or unreasonable.'" Id. at 116 (quoting Williams v. Dep't of Human Servs., 116 N.J. 102, 107 (1989)). "In fact, a court may not invalidate a regulation provided it is 'within the fair contemplation of the delegation of the enabling statute.'" Ibid. (quoting N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561-62 (1978)). "And in deciding whether a particular agency action is authorized, [we] 'may look beyond the specific terms of the enabling act to the statutory policy sought to be achieved by examining the entire statute in light of its surroundings and objectives.'" Ibid. (quoting N.J. Guild, supra, 75 N.J. at 562).

Nevertheless, "an administrative agency may not give itself authority not legislatively delegated. An agency possesses only

'expressly granted' powers and 'those incidental powers which are reasonably necessary or appropriate to effectuate the specific delegation,' and 'to enable [it] to accomplish its statutory responsibilities.'" Id. at 116-17 (quoting N.J. Guild, supra, 75 N.J. at 562). "Regulations, however, 'cannot alter the terms of a statute or frustrate the legislative policy.'" Ibid. (quoting Med. Soc'y of N.J. v. N.J. Dep't of Law & Pub. Safety, 120 N.J. 18, 25 (1990)).

"'Where there exists reasonable doubt as to whether [a particular] power is vested in the administrative body, the power is denied.'" Ibid. (quoting In re Closing of Jamesburg High Sch., 83 N.J. 540, 549 (1980)). "And when an administrative agency's rule or regulation contravenes the statute which created it, the rule 'will be set aside.'" Ibid. (quoting In re Freshwater Wetlands Prot. Act Rules, supra, 180 N.J. at 489). Accordingly, we have held that

> the party challenging a regulation has the
> burden of demonstrating an inconsistency
> between the regulation and the statute it
> implements, a violation of policy expressed
> or implied by the Legislature, an extension
> of the statute beyond what the Legislature
> intended, or a conflict between the enabling
> act and other statutory law that cannot be
> harmonized.
>
> [Id. at 118 (quoting N.J. Ass'n of Sch.
> Adm'rs v. Cerf, 428 N.J. Super. 588, 595-96
> (App. Div. 2012)).]

Further, even if a regulation falls within the scope of the agency's legislative authority, we will nonetheless invalidate it if the agency "significant[ly]" fails "to provide . . . regulatory standards that would inform the public and guide the agency in discharging its authorized function." Lower Main St. Assocs. v. N.J. Hous. & Mortg. Fin. Agency, 114 N.J. 226, 235 (1989) (citations omitted). As we have explained, the "deference [we afford to agencies] does not require abdication by the judiciary of its function to assure that agency rulemaking conforms with basic tenets of due process, and provides standards to guide both the regulator and the regulated." Id. at 236. Applying all of the above standards, we discern no reason to invalidate N.J.A.C. 16:64-9.4(d).

Here, the Legislature found and declared there was a need to provide a system that will ensure the proper and consistent training, selection, oversight and monitoring of docking pilots. N.J.S.A. 12:8-1.1(d). The Legislature delegated those responsibilities to the Commission and granted the Commission broad authority to adopt rules and regulations "to ensure safe operation of vessels and safe navigation, and to ensure the most current and exacting levels of training[.]" N.J.S.A. 12:8-2. Given the breadth of the discretion the Legislature afforded the Commission, we conclude that the examination requirement fell

well within the substantive authority vested in the Commission to ensure that docking pilot apprentices have been properly trained and can safely operate and navigate vessels in the New York and New Jersey port area. The examination requirement is consistent with and achieves the express legislative policies and overall objective underlying the Act to provide a system for the proper training of docking pilots.

In addition, the docking pilot regulations as a whole provide sufficient regulatory standards that inform the public and docking pilot apprentices of the content of the docking pilot apprentice examination. First, to be considered for a docketing pilot apprenticeship, the candidate must provide proof of licensure by the United States Coast Guard (USCG) "authorizing the piloting of vessels of any tonnage and endorsed for at least one section of the waters for which pilotage service may be required[.]" N.J.A.C. 16:64-9.3(b)(12). Thus, an apprentice must know the laws and regulations of the USCG and possess local knowledge and piloting specific to the Port of New York and New Jersey. This addresses the first and fourth modules of the examination -- the "Laws and Regulations of the Commission and [USCG]," and "Local Knowledge and Piloting specific to the Port of New York/New Jersey."

A-5176-13T1

Second, N.J.A.C. 16:64-9.4(e) unambiguously informs an apprentice that he or she will be tested on the Rules of the Road. This addresses the second module of the examination -- "Rules of the Road, including the International Regulations for Preventing Collisions at Sea (COLREGS) and Inland Navigation Rules."

Finally, N.J.A.C. 16:64-5.4(c)(1)-(3) require apprentices to conduct certain ship maneuverings and handlings. This addresses the third and fifth modules of the examination -- "Navigation and Seamanship (ship maneuvering and handling)," and "Practical Piloting." Accordingly, the docking pilot regulations conform with basic tenets of due process and provide appropriate standards that are consistent with the Act and guide the public and docking pilot apprentices.

In sum, we conclude that N.J.A.C. 16:64-9.4(d) is valid.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION