**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3307-19

L.C.,

     Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES and MONMOUTH
COUNTY BOARD OF SOCIAL
SERVICES,

     Respondents-Respondents.

_____

Argued October 6, 2021 – Decided October 26, 2021

Before Judges Hoffman, Whipple, and Susswein.

On appeal from New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Richard I. Miller agued the cause for appellant (Mandelbaum Salsburg, PC, attorneys; Richard I. Miller, of counsel and on the briefs; Shawna A. Brown, on the briefs).

Jacqueline R. D'Alessandro, Deputy Attorney General, argued the cause for respondent Division of Medial Assistance and Health Services (Andrew J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Jacqueline R. D'Alessandro, on the brief).

PER CURIAM

Petitioner L.C. appeals from a February 19, 2020 final agency decision (FAD) of the Department of Human Services, Division of Medical Assistance and Health Services (Division), imposing a 1,029-day transfer penalty in L.C.'s Medicaid application based on a transfer of $436,272.67. We reverse.

On April 29, 2015, L.C. and his spouse R.S. sold their marital residence in Cedar Knolls for $330,833.23, resulting in net proceeds of $277,438.23. L.C. and R.S. gave some or all proceeds of the home sale and other cash gifts to their daughter V.R. and her husband I.R. On May 13, 2015, V.R. and I.R. purchased a residence in Manalapan for $396,000. L.C. and R.S. lived at this home with V.R. and I.R. until L.C. moved to a nursing facility on October 27, 2017. The following day, I.R. and V.R. transferred by deed the Manalapan property to only R.S. for one dollar. R.S. continued to live in the home, the value of which was $425,000 in 2017. In addition, I.R. returned $10,000 in cash to R.S. Accordingly, L.C. asserts the total amount returned was $435,000.

2                                                                    A-3307-19

On January 30, 2018, R.S. filed a Medicaid application with the Monmouth County Division of Social Services (County) on behalf of L.C. Medicaid is a federally funded and state-administered-and-funded program that provides health care coverage and services to New Jersey residents who meet specified income thresholds. 42 U.S.C. § 1396 to 1396w-5; N.J.S.A. 30:4D-3(i). The Department of Human Services administers the Medicaid program in New Jersey. N.J.S.A. 30:4D-4. To be eligible for the Medicaid Only program, individual applicants' resources cannot exceed $2,000. N.J.A.C. 10:71-4.5(c). Applicants are subject to a "transfer penalty" when they transfer or dispose of resources for less than fair market value during or after the start of the sixty-month look-back period before the individual becomes institutionalized or applies for Medicaid as an institutionalized individual. 42 U.S.C. § 1396p(c)(1); N.J.A.C. 10:71-4.10(a), (m)(1). The transfer penalty does not apply if the applicant can prove that all assets transferred for less than fair market value have been returned to the individual. N.J.A.C. 10:71-4.10(e)(6)(iii).

On May 14, 2018, the Division approved L.C.'s application and issued a determination that L.C. transferred $463,672.67 in assets to become eligible for Medicaid benefits. As a result, the Division assessed a 1,093-day penalty,

3

making L.C. ineligible for Medicaid from December 1, 2017 through November 28, 2020. After receiving additional documentation from L.C., the Division issued on June 6, 2018, an amended determination that L.C. transferred $436,272.67 to become eligible for Medicaid benefits. Thus, the Division reduced the transfer penalty to 1,029 days, making L.C. ineligible for Medicaid from December 1, 2017 through September 25, 2020. Both parties stipulated that $436,272.67 is the transferred amount at issue.

L.C. filed a timely appeal to the Division, which transmitted the matter to the Office of Administrative Law where it was filed on June 26, 2018. On March 7, 2019, L.C. filed a motion for summary decision. On June 7, 2019, the administrative law judge (ALJ) denied L.C.'s motion for summary decision to rescind the transfer penalty. The fair hearing pursuant to N.J.A.C. 10:71-8.4 was conducted on August 28, 2019. On November 21, 2019, the ALJ filed an Initial Decision denying the petitioner's motion for summary decision. On February 19, 2020, the Division issued an FAD adopting the Initial Decision. This appeal followed.

Our review of an agency decision is limited. In re Anthony Stallworth, 208 N.J. 182, 194 (2011). "[A] 'strong presumption of reasonableness attaches to [an agency decision].'" In re Carroll, 339 N.J. Super. 429, 437 (App. Div.

2001), certif. denied, 170 N.J. 85 (2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993), aff'd, 135 N.J. 306 (1994)).

An agency's interpretation of its own regulation warrants substantial deference unless it is plainly unreasonable or inconsistent with the governing legislation. See In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488-89 (2004). "This deference comes from the understanding that a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise." In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010). It is not our province "to assess the wisdom of the agency's decision . . . only its legality." N.J. Ass'n of Nurse Anesthetists, Inc. v. N.J. State Bd. of Med. Exam'rs, 183 N.J. 605, 610 (2005). "Nevertheless, 'we are not bound by the agency's legal opinions.'" A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div. 2009), certif. denied, 200 N.J. 210 (2009) (quoting Levine v. State Dep't of Transp., 338 N.J. Super. 28, 32 (App. Div. 2001)). "Statutory and regulatory construction is a purely legal issue subject to [our] de novo review." Ibid. (citation omitted).

Ordinarily, we will reverse the decision of the administrative agency only if it is arbitrary, capricious, or unreasonable or it is not supported by

5

substantial credible evidence in the whole record. <u>See</u> <u>Campbell v. Dep't of Civ. Serv.</u>, 39 N.J. 556, 562 (1963). In determining whether an agency action is arbitrary, capricious, or unreasonable, our role is restricted to three inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [<u>In re Herrmann</u>, 192 N.J. 19, 28 (2007) (quoting <u>Mazza v. Bd. of Trs.</u>, 143 N.J. 22, 25 (1995)).]

"However, when an agency's decision is manifestly mistaken, the interests of justice authorize a reviewing court to shed its traditional deference to agency decisions." <u>P.F. v. N.J. Div. of Developmental Disabilities</u>, 139 N.J. 522, 530 (1995).

On appeal, L.C. argues that a transfer penalty should not apply because the full fair market value of the Cedar Knolls transfer was returned in compliance with N.J.A.C. 10:71-4.10(e) and 42 U.S.C. § 1396p(c)(2)(c). L.C. further argues that the Division's imposition of the transfer penalty was arbitrary, capricious, and unreasonable. We agree.

The Medicaid regulations treat a married couple as a single financial unit for the purpose of determining Medicaid eligibility. When a married Medicaid applicant requires long-term care, the Department of Human Services imposes a resource limit on both the assets of the applicant (the institutionalized spouse) and the non-institutionalized spouse (the community spouse). N.J.A.C. 10:71-4.8(a). "The total countable resources of the couple shall include all resources owned by either member of the couple individually or together." Ibid. Resources are:

> [A]ny real or personal property which is owned by the applicant (or by those persons whose resources are deemed available to him or her, as described in N.J.A.C. 10:71-4.6) and which could be converted to cash to be used for his or her support and maintenance. Both liquid and nonliquid resources shall be considered in the determination of eligibility, unless such resources are specifically excluded under the provisions of N.J.A.C. 10:71-4.4(b).
>
> [N.J.A.C. 10:71-4.1(b).]

"A resource which is classified as excludable shall not be considered either in the deeming of resources or in the determination of eligibility for participation in the Medicaid Only Program." N.J.A.C. 10:71-4.4(a). For example, a home that was the applicant's former principal residence and continues to be used by a spouse is excludable. N.J.A.C. 10:71-4.4(b)(1)(i).

(b) The following resources shall be classified as excludable:

1. A house occupied by the individual as his or her place of principal residence, and the land appertaining thereto, shall be excluded:

. . . .

i. An absence of more than six months is assumed to indicate that the home no longer serves as a principal residence. However, if the home is used by a spouse or there is evidence that the absence from the house is temporary, the home may continue to be excluded. With that exception, the [county welfare agency] shall extend the period only with approval from the Division of Medical Assistance and Health Services.

[Ibid.]

Applicants are subject to a transfer penalty when they transfer or dispose of resources for less than fair market value during or after the start of the sixty-month look-back period before the individual becomes institutionalized or applies for Medicaid as an institutionalized individual. 42 U.S.C. § 1396p(c)(1); N.J.A.C. 10:71-4.10(a), (m)(1). As to transfers of assets, "individual" means "[t]he individual him or herself who is applying for

8

benefits" and "[t]he individual's spouse." N.J.A.C. 10:71-4.10(b)(1). Assets "include all income and resources of the individual and of the individual's spouse." N.J.A.C. 10:71-4.10(b)(3). Thus, the Medicaid regulations contemplate that either spouse may liquidate their individual or collective assets to support the institutionalized spouse. Moreover, the transfer penalty does not apply when "assets were transferred to the individual's spouse." N.J.A.C. 10:71-4.10(e)(2).

Transfers within the look-back period are presumed to be an attempt by applicants to obtain earlier Medicaid eligibility than to which they were entitled. N.J.A.C. 10:71-4.10(j). An applicant may overcome this presumption if the applicant can prove that all assets transferred for less than fair market value have been returned to the individual. N.J.A.C. 10:71-4.10(e)(6)(iii). The State Medicaid Manual explains that "the full market value of the asset must be returned to the transferor, either in cash or another form acceptable to the State." CTRS. FOR MEDICARE & MEDICAID SERVS., TRANSMITTAL 64, STATE MEDICAID MANUAL 3258.10(3) (2010). Additionally, the State's Medicaid Communication issued to explain and clarify Medicaid regulations states:

> "(2) An individual shall not be ineligible for medical assistance by reason of paragraph (1) to the extent that

. . . .

> (C) A satisfactory showing is made to the state (in accordance with regulations promulgated by the Secretary) that . . . (iii) all assets transferred for less than fair market value have been returned to the individual."
>
> No adjustments to the penalty period can be made absent such a showing.
>
> [N.J. Dep't of Human Servs., Div. of Med. Assistance and Health Servs., Medicaid Communication No. 10-02 (May 26, 2010), https://www.state.nj.us/humanservices/dmahs/info/res ources/medicaid/2010/10-02_Resource_Assessments_and_Calculation_of_Reso urce_Transfer_Penalty_Periods.pdf (quoting U.S.C. § 1396p(c)(2)(C)).]

The Division's witness, M.D. Islam, Human Services Specialist from the County's Division of Social Services, conceded that the full market value of the asset may be returned in the form of a house if the house could be liquidated into cash accessible to the Medicaid applicant:

> Q: Let me focus on that for a little bit then. First going back to your original point that it had to be an equal like kind exchange, money for money, that was it, that was all that worked, you're aware of the Medicaid manual?
>
> A: Just for clarification, when I say money for money, it has to be money for money or as I said, as

10

you have mentioned, something that could be liquidated into cash.

Q: So car would work, stock would work, even a house would work?

A: If that could be liquidated into cash and accessible to the client.

Here, under a plain reading of the State's Medicaid regulations, L.C. overcame the N.J.A.C. 10:71-4.10(j) presumption by effectuating a return of real property to himself via his spouse, R.S. The parties do not dispute that the fair market value of the Manalapan property was $425,000 on October 27, 2017, and that V.R. returned to R.S. both the home and $10,000 in cash. Therefore, because the fair market equivalent of the Cedar Knolls home was returned to L.C. via R.S. in the form of the Manalapan house and cash, the Division improperly imposed the transfer penalty.

The Division advances two alternative arguments to rebut the sufficiency of the inter-spousal transfer to cure the transfer penalty. The Division first argues that the Manalapan house was not excludable from L.C.'s resources because the house was returned to only R.S. rather than to L.C. or to L.C. and R.S. together. The Division explains that "because L.C. did not receive any interest in the Manalapan house, it could not be considered an excludable

11

resource. And, because the house cannot be considered an excludable resource, the transfer penalty was properly imposed."

The Division's argument fails for two reasons. First, the Division suggests that the institutionalized spouse individually, or jointly with his or her spouse, must receive an interest in excludable property to avoid the transfer penalty. No statutory or regulatory authority, however, supports this assertion. The Medicaid regulations do not differentiate between property owned by either spouse individually or by both spouses together. N.J.A.C. 10:71-4.8(a); N.J.A.C. 10:71-4.10(b). Thus, the return of property to R.S. constitutes a return to L.C. regardless of the property's excludability.

Next, the regulations do not attach significance to the ownership of the principal residence in determining whether the home is excludable. The regulations clearly and unambiguously provide that "[a] house [formerly] occupied by the individual as his or her place of principal residence" is excluded, and continues to be occupied by the individual's spouse, is excludable. N.J.A.C. 10:71-4.4(b)(1)(i).

Here, the Manalapan home is excludable. The parties do not dispute that L.C. and R.S. resided at the Manalapan home together until L.C. moved to a nursing home on October 27, 2017, and that R.S. continues to reside there.

12

Thus, the Division's refusal to accept L.C. and R.S.'s inter-spousal transfer of real property to cure the transfer penalty is arbitrary, capricious, and unreasonable.

Moreover, the Division's earlier position was that the house was excludable, disqualifying it from satisfying the transfer penalty exemption. But the Division offered no statutory or regulatory authority to support its view that the return of excludable property may not cure the transfer penalty. The regulations plainly state that the Division may not impose the transfer penalty when the applicant can prove that "[a]ll assets transferred for less than fair market value have been returned to the individual." N.J.A.C. 10:71-4.10(e)(6)(iii). The regulations do not require that the assets be non-excludable. Therefore, imposing the transfer penalty is arbitrary, capricious, and unreasonable.

A plain reading of the State's Medicaid regulations supports the argument that the transfer of the Manalapan home constituted a return to L.C. via his spouse R.S. pursuant to N.J.A.C. 10:71-4.8 and -4.10(b)(1). And, because the home was L.C.'s former principal residence and is R.S.'s continued principal residence, the home is excludable pursuant to N.J.A.C. 10:71-4.4.

13

L.C. also argues that the Division's FAD was against public policy because "[i]f a transfer penalty is imposed, [R.S.] will be forced to sell the Manalapan [p]roperty" where she resides to pay for L.C.'s care. Such an outcome contravenes the goal of the Medicare Catastrophic Coverage Act (MCCA), 42 U.S.C. § 1396r-5. Congress enacted the MCCA to "end the pauperization of the community spouse by allowing that spouse to protect a sufficient, but not excessive, amount of income and resources to meet his or her own needs while the institutionalized spouse was in a nursing home at Medicaid expense." Mistrick v. Div. of Med. Assistance & Health Servs., 154 N.J. 158, 170 (1998).

The Division ultimately relied upon the fact that the house was an excludable asset and justifies its decision to prevent applicants from circumventing the system.

> Because Medicaid serves the purpose of providing necessary medical services for both the indigent and the elderly, a related goal of the MCCA is to preclude couples who possessed substantial resources from qualifying for Medicaid. By sheltering a portion of their shared resources in trusts or in the community spouse's name, a couple might appear to have fewer resources, making them eligible for Medicaid.
>
> [Ex rel. Cleary v. Waldman, 167 F.3d 801, 805 (3d Cir. 1999), cert. denied, 528 U.S. 870 (1999).]

Although the Division's public policy rationale has merit, we decline to decide the resolution of these two public policies that are in tension with one another. That issue may be ripe for the agency to address and clarify through rulemaking. See generally Metromedia, Inc. v. Dir., Div. of Tax'n, 97 N.J. 313, 328-35 (1984).

As the ALJ explained, "[b]ecause the return of assets provision could easily be exploited as a loophole, the Division determined that it needed to draw a line and chose to do so with respect to the facts in this case." The ALJ also observed, however, the Division's position is not supported by legal authority.

> Q: So it could be anything, it doesn't have to be cash is now what you're saying.
>
> A: It could be anything that could be liquidable and accessible to the client in the same amount.
>
> [Division's attorney]: I am going to object. I think we did establish in the beginning of this hearing that there's no legal authority that addresses on point either way, that has to be the same form or non-form, there's no legal authority that we can all find that says you can or cannot do that, so I think trying to force him to come up with a citation which we all know doesn't address it on point, there's no legal authority that addresses it on point.

A-3307-19

Therefore, because the agency may undertake rulemaking to address this novel issue, we decline to resolve the public policy issues arising in this case. Therefore, because the Division's imposition of the transfer penalty does not comport with a plain reading of the regulations and is arbitrary, capricious, and unreasonable, we reverse.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION